The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 19, 2020

## 2020COA45

**No. 19CA0991, People in Interest of S.A.G. — Juvenile Court — Dependency and Neglect — Termination of the Parent-Child Legal Relationship; Family Law — Uniform Child-custody Jurisdiction and Enforcement Act — Temporary Emergency Jurisdiction — Initial Child-custody Jurisdiction**

In this dependency and neglect proceeding, a division of the court of appeals considers whether the Uniform Child-custody Jurisdiction and Enforcement Act (UCCJEA), §§ 14-13-101 to -403, C.R.S. 2019, requires a juvenile court to communicate with a court in the child's home state, even though no child-custody proceeding was ever commenced or is pending there. The division concludes that a court must do so if Colorado is not the child's home state under the UCCJEA when a child-custody proceeding is commenced.

COLORADO COURT OF APPEALS                                    2020C0A45

Court of Appeals No. 19CA0991
City and County of Denver Juvenile Court No. 17JV1735
Honorable Laurie A. Clark, Judge

The People of the State of Colorado,

Appellee,

In the Interest of S.A.G., a Child,

and Concerning B.A.G. and A.W.D.,

Appellants.

JUDGMENT VACATED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE DAILEY
Bernard, C.J., and Navarro, J., concur

Announced March 19, 2020

Kristin M. Bronson, City Attorney, Laura Grzetic Eibsen, Assistant City
Attorney, Denver, Colorado, for Appellee

Gina G. Bischofs, Guardian Ad Litem

Chelsea A. Carr, Office of Respondent Parents' Counsel, Denver, Colorado, for
Appellant B.A.G.

Susan C. Baker, Office of Respondent Parents' Counsel, El Prado, New Mexico,
for Appellant A.W.D.

¶ 1    In this dependency and neglect proceeding, A.W.D. (mother) and B.A.G. (father) appeal the juvenile court's judgment terminating their legal relationships with S.A.G. (the child). We must resolve an undecided question in Colorado: whether the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA), §§ 14-13-101 to -403, C.R.S. 2019, requires a juvenile court to communicate with a court in the child's home state, even though no child-custody proceeding was ever commenced or is pending in the child's home state. We conclude that a Colorado court must do so if Colorado is not the child's home state under the UCCJEA when a child-custody proceeding is commenced. Because the juvenile court did not do so, we vacate the termination judgment and remand the case for further proceedings.

*I. Background*

¶ 2    The child was born in 2014. He lived with the parents in Arkansas until the family came to Colorado in late 2017. About three weeks after the family came to Colorado, the Denver Department of Human Services (Department) obtained custody of the child and initiated a dependency and neglect case.

1

¶ 3      At the shelter hearing three days later, mother admitted that the child's environment was injurious to his welfare, and the court adjudicated him dependent and neglected as to her. But mother's counsel told the court that mother resided in Arkansas and that she "wasn't planning on moving" to Colorado. The court asked if another court had jurisdiction over the child; counsel said no. The court's placement order noted that an emergency justified temporary removal, but it did not say that the court was exercising temporary emergency jurisdiction under UCCJEA.

¶ 4      After the shelter hearing, the case proceeded along the usual course. At mother's dispositional hearing in December, she reiterated that she resided in Arkansas and desired to return there as soon as possible. The court responded that it could not send the child back to Arkansas until a placement had been approved under the Interstate Compact on the Placement of Children (ICPC).

¶ 5      At a hearing in January, the juvenile court adjudicated the child dependent and neglected based on father's admission that the child had been subjected to an injurious environment. During this hearing, father said that he was now in regular communication with

2

the county and state human services offices in Arkansas to determine what services he could obtain there.

¶ 6 The juvenile court adopted treatment plans for mother and father. The adjudicatory and dispositional orders for mother and father did not (1) address UCCJEA jurisdiction; (2) say that either order would become final unless an order was obtained from Arkansas; or (3) contain any finding of an ongoing emergency. Likewise, the court did not address jurisdiction in any of its permanency planning or periodic review orders.

¶ 7 At a review hearing in May 2018, father's counsel said, "[T]he parents have been clear since . . . this case opened that they were in Colorado temporarily; that Arkansas was their home where all of their supports are, and they wanted to get back there as soon as possible . . . . [S]o they are still looking to return to Arkansas." Counsel also asked the court to transfer jurisdiction to Arkansas. The court said that it could not because "there was no case open in Arkansas." But the court acknowledged the limits to its temporary emergency jurisdiction:

> We don't have authority at this point to do an allocation of parental responsibilities because we're not the home state . . . . We would only

have emergency jurisdiction and so couldn't enter any permanent orders. . . . [B]ut if it turned out to be a termination, then we would have jurisdiction. It's only if we end with anything other than a termination that we wouldn't have jurisdiction, is my understanding.

The Department's attorney concurred in this assessment and offered that it "would have to look into" the jurisdictional issue.

¶ 8 Mother and father returned to Arkansas the next month, but without the child. They had remained in Colorado for about seven months after the court entered the initial emergency out-of-home placement order.

¶ 9 At the next permanency planning hearing in August 2018, the Department's attorney asked the court to inquire with the parents about any out-of-state child-custody proceedings that could affect jurisdiction. The court did so. Mother said that she was not aware of any pending neglect or custody cases involving the child. She explained that the child had lived in Arkansas continuously until the family came to Colorado three weeks before the case began. Father agreed. After discussing the status of a placement with paternal grandmother in Arkansas, the court said it lacked

4

jurisdiction to place the child with her unless Arkansas was willing to accept the child under the ICPC.

¶ 10   The Department moved to terminate parental rights in September 2018. The termination proceedings stretched over seven months. The parents appeared by phone for all proceedings after moving back to Arkansas in June 2018. During the hearing, the Department's attorney said that the parents were involved with a human services department in Arkansas and that they had been assigned a caseworker there.

¶ 11   At the conclusion of the hearing, the juvenile court found that it had jurisdiction because "the incident that brought this to the attention of the [D]epartment occurred in Denver, Colorado." Again, the court did not mention the UCCJEA. It then made the requisite statutory findings by clear and convincing evidence and terminated mother's and father's parental rights.

## II. Jurisdiction under the UCCJEA

¶ 12   Father contests the juvenile court's jurisdiction to terminate his parental rights under the UCCJEA. We agree that the record does not show that the court properly acquired jurisdiction.

## A. Preservation and Standard of Review

¶ 13    All parties acknowledge that lack of subject matter jurisdiction can be raised for the first time on appeal. *People in Interest of C.L.T.*, 2017 COA 119, ¶ 13.

¶ 14    We review subject matter jurisdiction under the UCCJEA and the juvenile court's interpretation of that statute de novo. *Id.* at ¶ 14; *see also Airth v. Zurich Am. Ins. Co.*, 2018 COA 9, ¶ 25. But the juvenile court resolves factual disputes about jurisdiction, and appellate courts may not disturb those findings unless they are clearly erroneous. *CAMAS Colo., Inc. v. Bd. of Cty. Comm'rs*, 36 P.3d 135, 138 (Colo. App. 2001). The petitioning party — in this case, the Department — bears the burden of establishing UCCJEA jurisdiction. *People in Interest of A.B-A.*, 2019 COA 125, ¶ 14.

## B. Law

¶ 15    One purpose of the UCCJEA is to "promote cooperation with the courts of other States to the end that a custody decree is rendered in the State which can best decide the case in the interest of the child." § 14-13-101 cmt. 2, C.R.S. 2019. To answer the question of which state could "best decide" this case, we must compare section 14-13-204, C.R.S. 2019, which confers temporary

6

emergency jurisdiction, with section 14-13-201, C.R.S. 2019, which provides the exclusive jurisdictional basis for making an initial, non-emergency child-custody determination by a court in this state. *See* § 14-13-102(3), C.R.S. 2019 (defining "child-custody determination" to include a "permanent, temporary, initial, and modification order" for "the legal custody or physical custody of a child").

¶ 16    These two sections of the UCCJEA provide separate and distinct jurisdictional bases. *See* § 14-13-201 cmt. 2 (noting that under the predecessor to the UCCJEA, emergency jurisdiction had been included under subsection 201, but that it had been moved to a separate section "to make it clear that the power to protect a child in crisis does not include the power to enter a permanent order for that child except as provided by that section").

### 1. Temporary Emergency Jurisdiction

¶ 17    The UCCJEA provision governing temporary emergency jurisdiction under section 14-13-204 contains four subsections, two of which are relevant here.

¶ 18    Subsection (1) authorizes a Colorado court to exercise temporary emergency jurisdiction under two conditions: (1) the

child must be present in the state; and (2) the exercise of jurisdiction must be "necessary *in an emergency* to protect the child" from "mistreatment or abuse." § 14-13-204(1) (emphasis added). However, "this temporary emergency jurisdiction under the UCCJEA is limited in scope and in time." *A.B-A.*, ¶ 13. A court exercising temporary emergency jurisdiction must promptly investigate whether the court has ongoing, non-emergency jurisdiction, and may not enter a permanent custody disposition based on emergency jurisdiction. *Id.*; *C.L.T.*, ¶ 19; *see also* § 14-13-204 cmt. ("[A] custody determination made under [these] provisions . . . is a temporary order. The purpose of the order is to protect the child until the State that has jurisdiction under Section[] 14-13-201 . . . enters an order."); § 19-3-608(1), C.R.S. 2019 (an order terminating parental rights permanently divests the parent of custody).

¶ 19 Subsection (2) explains the effect of an order entered by a Colorado court exercising temporary emergency jurisdiction when no other court has established UCCJEA jurisdiction:

> If there is no previous child-custody determination that is entitled to be enforced under this article and a child-custody

8

proceeding has not been commenced in a court of a state having jurisdiction under [the UCCJEA], a child-custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under [the UCCJEA]. If a child-custody proceeding has not been or is not commenced in a court of a state having jurisdiction under [the UCCJEA], a child-custody determination made under this section becomes a final determination, *if it so provides* and *this state becomes the home state of the child*.

§ 14-13-204(2) (emphasis added).

### 2. Home State Jurisdiction and Alternatives

¶ 20    Section 14-13-201 contains four independent grounds for jurisdiction. Subsection (1)(a) addresses when Colorado is the home state of a child. The subsections that follow explain how a Colorado court can exercise jurisdiction when it is not the home state. They include "significant connection" jurisdiction, "more appropriate forum" jurisdiction, and last resort jurisdiction (no court in any other state would have jurisdiction). § 14-13-201(1)(b)(I), (c), (d); *see C.L.T.*, ¶¶ 26-29. Both the significant connection and more appropriate forum alternatives to home state jurisdiction provide that, among other requirements, the

9

home state decline to exercise its jurisdiction.  § 14-13-201(1)(b)(I), (c), (d).

### C.  Application

¶ 21    Father neither challenges the juvenile court's exercise of temporary emergency jurisdiction nor addresses when that jurisdiction ended.  As to the initial out-of-home placement order, we do not see any basis in the record for disputing the juvenile court's jurisdiction.  The child was present in Colorado, and the record supports the statement in the order that an emergency justified immediate action.  Because father challenges only the termination judgment, we decline to address the juvenile court's jurisdiction to enter any of the interim orders.

¶ 22    Instead, father argues that the juvenile court lacked jurisdiction to terminate his parental rights.  He asserts that temporary emergency jurisdiction did not provide the court with jurisdiction to enter a permanent order terminating parental rights. He further asserts that the court needed to establish a basis for ongoing jurisdiction under section 14-13-201 and had to communicate with a court in Arkansas.  As well, he continues, the juvenile court could only exercise "significant connection" or "more

10

appropriate forum" jurisdiction if Arkansas declined to exercise its jurisdiction.

¶ 23    The Department and the guardian ad litem (GAL) respond that delving into section 14-13-201 and remanding for jurisdictional findings are unnecessary because Colorado became the child's home state under section 14-13-204(2). They say, "Such a finding can be inferred from the court's oral termination ruling . . . ." Alternatively, they assert that, even if remand is necessary, the juvenile court need not contact a court in Arkansas. And while they concede that communication between courts "may constitute a best practice," the Department and GAL argue that the UCCJEA does not require it.

¶ 24    We agree with father.

¶ 25    As applicable here, a child-custody determination entered pursuant to temporary emergency jurisdiction may become a final determination if (1) the order states that it will become final and (2) Colorado becomes the child's home state. § 14-13-204(2). Yet, none of these orders included the required proviso. And, as the court in *In re Gino C.*, 169 Cal. Rptr. 3d 193, 197-98 (Cal. Ct. App. 2014), explained:

> The court's efforts to comply with the UCCJEA fell short because the court misinterpreted [the emergency jurisdiction section] as allowing the court's temporary emergency jurisdiction to automatically convert to permanent jurisdiction if the parents did not initiate child custody proceedings in Mexico. Instead, the statute precludes a child custody determination by a court exercising temporary emergency jurisdiction from becoming final until this state becomes the child's home state.

¶ 26   Because the juvenile court lacked jurisdiction to terminate parental rights under temporary emergency jurisdiction, we must turn to section 14-13-201 to find an alternative basis for jurisdiction. Applying that section here raises two concerns: first, the juvenile court failed to make any meaningful jurisdictional findings for its termination judgment; and, second, the court failed to communicate with any court in Arkansas. These concerns require separate analysis.

¶ 27   We have recognized a lower court's implied findings in cases involving jurisdictional disputes. *E.g.*, *Marquest Med. Prods., Inc. v. Daniel, McKee & Co.*, 791 P.2d 14, 15 (Colo. App. 1990) (upholding the trial court's implicit jurisdictional finding when it denied a defendant's motion to dismiss); *see generally Foster v. Phillips*, 6

12

P.3d 791, 796 (Colo. App. 1999) (noting that "while it is the better practice to make express findings, they may be implicit in a court's ruling"); *Catron v. Catron*, 40 Colo. App. 476, 479, 577 P.2d 322, 324 (1978) (holding that a statutorily required factual finding "was implicit in the trial court's rulings").

¶ 28     But given the child's brief presence in Colorado before the juvenile court entered the out-of-home placement order, the record contains no basis on which we could infer that the court found Colorado to be the child's home state.  *See* § 14-13-102(7)(a) (defining "Home state");[1] § 14-13-201(1)(a) (explaining home state jurisdiction).  And because Arkansas meets the definition of home

---

[1] "Home state" is defined as

> the state in which a child lived with a parent or a person acting as a parent for at least one hundred eighty-two consecutive days immediately before the commencement of a child-custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

§ 14-13-102(7)(a), C.R.S. 2019.

state, last resort jurisdiction would not work either.  *See*
§ 14-13-201(1)(d) (giving home state jurisdiction priority).

¶ 29     Turning to "significant connection" and "more appropriate
forum" jurisdiction, both of those options require that a home state
court decline jurisdiction before another state's court can invoke it.
§ 14-13-201(1)(b)(I), (c).  Even assuming the record established that
"substantial evidence" was available in Colorado about the child's
care, the record does not show any "significant connection" of father
and the child to Colorado other than their mere physical presence.
§ 14-13-201(1)(b)(I).

¶ 30     So, what does "decline[] to exercise jurisdiction" mean?  *See id.*
Everyone before us agrees that the record does not show any
communications between the juvenile court and any court in
Arkansas.  Properly framed, the question is this: May a court find
that a home state "has declined to exercise jurisdiction" when no
affirmative act has been taken to communicate with a court in the
home state?  For the following reasons, we answer this question
"no."

¶ 31     Courts in other states have held that declining jurisdiction
under the UCCJEA means something more "than the absence of

litigation on the specific issue raised by a motion to modify filed in another state." *Manley v. Hoag*, 917 P.2d 1011, 1014 (Okla. Civ. App. 1996). This interpretation finds support in the official comments to the UCCJEA, which Colorado has incorporated into the statute. The comments say that a court may only exercise significant-connection jurisdiction "when the home State *decides* that the significant connection State would be a more appropriate forum . . . ." § 14-13-201 cmt. 2 (emphasis added). For jurisdiction based on a "more appropriate forum," the comments say that jurisdiction may be exercised when the home state and any significant-connection jurisdiction "*determine* that [another] State is a more appropriate forum." *Id.* (emphasis added). But if the home state has "*determined* it is a more appropriate place to hear the case," the more appropriate forum analysis ends. *Id.*

¶ 32 These words — "decide" and "determine" — suggest that the home state must have had an opportunity to weigh in and been made aware of a possible reason to do so. *See* Webster's Third New International Dictionary 585 (2002) (defining "decide" as "to arrive at a choice, judgment, or decision"); *id.* at 616 (defining "determine" as "to settle or decide by choice of alternatives or possibilities"). The

15

Department and GAL correctly point out that the UCCJEA does not expressly require a non-home state court to communicate with a home state court in the absence of an existing determination or pending proceeding.  Still, section 14-13-201 requires the home state to decline jurisdiction before the non-home state can exercise it.  Simply put, without knowledge of the Colorado proceeding, an Arkansas court could not have determined or decided whether "to exercise jurisdiction."

¶ 33    In *In re Gino C.*, the court explained, "[s]ince the [California] court opted to remain passive and did not contact Mexico, Mexico has not been given an opportunity to decide whether to exercise its home state jurisdiction.  Therefore, the court erred in assuming permanent jurisdiction over the matter."  169 Cal. Rptr. 3d at 197-98; *see Wood v. Redwine*, 33 P.3d 53, 56 (Okla. Civ. App. 2001) ("In the present case, no other state with jurisdiction has declined to exercise jurisdiction, and the failure of the parties to seek the jurisdiction of another state's courts is not dispositive."); *Ruffier v. Ruffier*, 190 S.W.3d 884, 890 (Tex. Ct. App. 2006) (until home state affirmatively declines jurisdiction, another state cannot assert significant connection jurisdiction).

16

¶ 34   Despite all of this, the Department and GAL insist that unless a proceeding had been commenced or was pending in Arkansas, the juvenile court would not know where to inquire. We are not persuaded. Under the UCCJEA, the Department had the burden to establish jurisdiction. *A.B-A.*, ¶ 14. And, here, the Department had been communicating with a counterpart agency in Arkansas concerning the home study into paternal grandmother. The Department could have sought assistance from that agency in determining the proper court to contact.

¶ 35   For these reasons, we conclude that the juvenile court lacked jurisdiction to terminate parental rights under the UCCJEA's temporary emergency jurisdiction provision. Furthermore, because the record does not establish (and the juvenile court did not make findings regarding) a basis for continuing UCCJEA jurisdiction, the termination judgment as to both parents must be vacated.

¶ 36   Because we have determined that the termination judgment must be vacated, we do not address the parents' remaining arguments.

17

### *III. Conclusion*

¶ 37     The judgment is vacated.  The matter is remanded to the juvenile court for it to determine whether it has continuing jurisdiction under section 14-13-201.  Before doing so, the court must communicate with an Arkansas court and the Arkansas court must decline to exercise jurisdiction.

¶ 38     In its discretion, the court may take further evidence concerning jurisdiction.  If the court concludes that it has continuing jurisdiction, then it may reinstate the termination judgment, based on the existing record, after affording the parties an opportunity to present evidence.  Either party may appeal.

¶ 39     Pending further order of the juvenile court, the out-of-home placement order remains in effect and the child shall stay in his current placement.

CHIEF JUDGE BERNARD and JUDGE NAVARRO concur.