The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
October 29, 2020

## 2020COA152

## No. 19CA2326, *People in the Interest of G.C.M.M.* — Family Law — Paternity — Uniform Parentage Act — Uniform Child-custody Jurisdiction and Enforcement Act

In this paternity proceeding, a division of the court of appeals

considers the interplay between the jurisdictional provisions of the

Uniform Parentage Act (UPA) and the Uniform Child-custody

Jurisdiction and Enforcement Act (UCCJEA). The child at issue

was conceived in Colorado but born in another state, and the

juvenile court determined that it lacked jurisdiction to make a

child-custody determination.

Agreeing with the juvenile court, the division concludes that,

while a paternity proceeding under the UPA may be initiated before

a child's birth, a court must also have jurisdiction under the

UCCJEA before it may make a child-custody determination as part

of the proceeding.  The juvenile court here did not have jurisdiction under the UCCJEA because that statute does not provide a basis for jurisdiction over an unborn child.  Nor does the UPA expressly authorize a court to make a child-custody determination before the child is born.  Therefore, the division affirms the judgment.

Court of Appeals No. 19CA2326
El Paso County District Court No. 18JV906
Honorable Linda Billings Vela, Judge

The People of the State of Colorado,

Appellee,

In the Interest of G.C.M.M., a Child,

and Concerning S.M.M.,

Appellant,

and

L.M.D.,

Appellee.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE NAVARRO
Fox and Brown, JJ., concur

Announced October 29, 2020

Modern Family Law, Chelsea Hillman, Denver, Colorado, for Appellant

Law Office of Greg Quimby PC, Greg Quimby, Erica Vasconcellos, M. Addison Freebairn, Colorado Springs, Colorado, for Appellee

¶ 1　　In this paternity proceeding, we must consider the interplay between the jurisdictional provisions of the Uniform Parentage Act (UPA), §§ 19-4-101 to -130, C.R.S. 2019, and the Uniform Child-custody Jurisdiction and Enforcement Act (UCCJEA), §§ 14-13-101 to -403, C.R.S. 2019.  S.M.M. (father) appeals the juvenile court's judgment vacating an earlier custody order for lack of subject matter jurisdiction.  Father's child, G.C.M.M., was conceived in Colorado, and father filed this paternity proceeding before the child's birth.  The child was born in New Hampshire, however, and has never lived in Colorado.  Still, father asserts that the juvenile court could make a custody determination because its jurisdiction over this proceeding was established before the child's birth.

¶ 2　　We reach the opposite conclusion.  While a paternity proceeding under the UPA may be initiated before a child's birth, the court must also have jurisdiction under the UCCJEA before it may make a child-custody determination as part of the proceeding. The juvenile court here did not have jurisdiction under the UCCJEA because that statute does not provide a basis for jurisdiction over an unborn child.  Nor does the UPA expressly authorize a court to

make a child-custody determination before the child is born. As a result, we affirm the judgment.

## I. Procedural History

¶ 3     In August 2018, father initiated a paternity proceeding under the UPA concerning the yet to be born child. He sought a determination that he was the child's father and an allocation of parental responsibilities — decision-making authority and parenting time — for the child. When father initiated the proceeding, he and L.M.D. (mother) lived in Colorado.

¶ 4     Before the child's birth, however, two significant events occurred for purposes of this case. First, mother moved to New Hampshire. Second, based on the parents' agreement, a magistrate issued a paternity judgment declaring father the child's parent.

¶ 5     The child was born in New Hampshire in mid-September 2018. Not long after, the parents stipulated to a parenting plan that contemplated father's exercising parenting time with the child in New Hampshire. The magistrate adopted the stipulation and set a permanent orders hearing for July 2019.

¶ 6     Before the hearing, mother moved to dismiss the action based on a lack of subject matter jurisdiction because the child had lived

2

in New Hampshire his entire life. Mother also initiated a child-custody proceeding in New Hampshire. After communicating with the Colorado magistrate, the New Hampshire court stayed its proceeding pending the resolution of the jurisdictional dispute.

¶ 7 The magistrate decided that a Colorado court could make a custody determination because its jurisdiction to determine paternity was properly invoked before the child's birth and such jurisdiction included an allocation of parental responsibilities. The magistrate further reasoned that the court had not lost jurisdiction when mother moved out of the state before the child's birth.

¶ 8 Mother sought review of the magistrate's order by a juvenile court judge. The juvenile court concluded that the magistrate had jurisdiction to determine paternity, but that the magistrate erred by holding that Colorado had jurisdiction to make a child-custody determination. The court also concluded that the UPA provides no authority to restrain a pregnant mother from leaving the state. Accordingly, the court (1) affirmed the paternity judgment; (2) denied mother's request to dismiss the case; and (3) vacated the temporary custody order and directed the magistrate to confer with the New Hampshire court in accordance with the UCCJEA.

## II.  Jurisdiction

¶ 9     Father contends that the juvenile court erred by concluding that the UCCJEA's provisions limit its jurisdiction to make a custody determination in a paternity case.  He argues that the UPA confers broader jurisdiction to make custody determinations than the UCCJEA because the UPA permits a juvenile court to acquire jurisdiction when a paternity action is initiated before a child's birth.  We disagree.

### A.  Standard of Review and Statutory Interpretation

¶ 10     Whether a juvenile court has subject matter jurisdiction over a child-custody proceeding is a question of law that we review de novo.  *Brandt v. Brandt*, 2012 CO 3, ¶ 18.  We also review questions of statutory interpretation de novo.  *People in Interest of L.M.*, 2018 CO 34, ¶ 13.

¶ 11     In construing a statute, we look at the entire statutory scheme "in order to give consistent, harmonious, and sensible effect to all of its parts, and we apply words and phrases in accordance with their plain and ordinary meanings."  *Id.* (quoting *UMB Bank, N.A. v. Landmark Towers Ass'n*, 2017 CO 107, ¶ 22).  When construing statutes related to the same subject matter, we aim to avoid an

4

interpretation that would render certain words or provisions superfluous or ineffective. *Id.* Instead, we adopt an interpretation that achieves consistency across a comprehensive statutory scheme. *Id.*

### B. Stipulation to Initial Parenting Plan

¶ 12    To start, we recognize that mother and father initially stipulated to a parenting plan and asked the magistrate to adopt it. But the parties cannot confer subject matter jurisdiction on a court. *See In re Marriage of Tonnessen*, 937 P.2d 863, 865 (Colo. App. 1996). Furthermore, a question of subject matter jurisdiction may not be waived and may be raised at any time. *In re Marriage of Finer*, 893 P.2d 1381, 1384 (Colo. App. 1995).

### C. Statutory Frameworks

#### 1. The UPA

¶ 13    Paternity proceedings are generally subject to the UPA. *N.A.H. v. S.L.S.*, 9 P.3d 354, 360 (Colo. 2000); *see also In re Support of E.K.*, 2013 COA 99, ¶ 9.[1] Except as otherwise provided by law, the

---

[1] A proceeding to determine paternity may also be brought under the Uniform Interstate Family Support Act (UIFSA). §§ 14-5-201, 14-5-402, C.R.S. 2019. UIFSA enumerates additional bases for

juvenile court has exclusive jurisdiction to determine the parentage of a child who was conceived in the state and to make an order of support in connection therewith. § 19-1-104(1)(f), C.R.S. 2019; § 19-4-109(1), (2), C.R.S. 2019. A paternity proceeding may be initiated before a child's birth. § 19-4-105.5(3), C.R.S. 2019.

¶ 14    Except as otherwise provided by law, the juvenile court may determine the custody of a child who otherwise comes within its jurisdiction. § 19-1-104(1)(c). Once a paternity proceeding is initiated, a temporary injunction goes into effect restraining each parent from removing from the state a child who is the subject of the proceeding. § 19-4-105.5(5)(c)(I)(B). The court may also issue orders concerning the allocation of parental responsibilities, including determinations of decision-making authority and

---

jurisdiction over nonresidents in proceedings to establish support orders or to determine parentage. *In re Parental Responsibilities of H.Z.G.*, 77 P.3d 848, 854 (Colo. App. 2003). It provides an alternative statutory method outside of the UPA for determining support and parentage issues. *DeWitt v. Lechuga*, 393 S.W.3d 113, 117 (Mo. Ct. App. 2013); *see also In Interest of R.L.H.*, 942 P.2d 1386, 1389 (Colo. App. 1997) (holding that UIFSA remedies are cumulative to remedies available under other law). No party invoked UIFSA's provisions in this case.

parenting time, as part of the proceeding. §§ 19-4-111(4), 19-4-116(3)(a), 19-4-130(1), C.R.S. 2019.

## 2. The UCCJEA

¶ 15    In addition to the UPA, the UCCJEA governs whether a court has jurisdiction to address custody matters, including an allocation of parental responsibilities. *See Madrone v. Madrone*, 2012 CO 70, ¶ 10. Indeed, the phrase "[e]xcept as otherwise provided by law" in section 19-1-104(1) indicates that the juvenile court's jurisdiction is limited by other legislative enactments. *Nistico v. Dist. Court*, 791 P.2d 1128, 1129 (Colo. 1990).

¶ 16    The UCCJEA is designed to avoid jurisdictional competition between states over child-custody matters in an increasingly mobile society. *Brandt*, ¶ 19. To accomplish this purpose, the UCCJEA establishes a comprehensive framework that a Colorado court must follow to determine whether it may exercise jurisdiction in a child-custody matter or whether it must defer to a court of another state. *In Interest of M.M.V.*, 2020 COA 94, ¶ 17. Absent emergency jurisdiction, a court of this state may make an initial child-custody determination only if it has jurisdiction to do so based on the grounds identified in section 14-13-201, C.R.S. 2019. *Madrone,*

7

¶ 10; *see also In re Parental Responsibilities Concerning B.C.B.*, 2015 COA 42, ¶ 10.

¶ 17    Section 14-13-201 contains four independent grounds for jurisdiction to make an initial child-custody determination. *People in Interest of S.A.G.*, 2020 COA 45, ¶ 20 (*cert. granted* Sept. 14, 2020).  First, a court may have jurisdiction if Colorado is the home state of the child on the date of the commencement of the proceeding or was the home state within 182 days of the commencement of the proceeding.  § 14-13-201(1)(a).  A child's home state is the state in which the child has lived with a parent for at least 182 consecutive days immediately before the commencement of the proceeding or, for a child less than six months of age, the state in which the child has lived from birth. § 14-13-102(7)(a), C.R.S. 2019.  The UCCJEA prioritizes home state jurisdiction for initial child-custody determinations.  *Madrone*, ¶ 11.

¶ 18    The other three bases for establishing jurisdiction apply when Colorado is not the child's home state.  *S.A.G.*, ¶ 20.  They include "significant connection" jurisdiction, "more appropriate forum" jurisdiction, and "last resort" jurisdiction (no court in any other state would have jurisdiction).  *Madrone*, ¶¶ 15-17; *see also*

8

§ 14-13-201(1)(b)(I), (c), (d).  No party asserts that any of these other bases applies here.

### D.  Jurisdiction to Determine Paternity

¶ 19    We first conclude that the juvenile court properly determined that it had jurisdiction to determine the child's paternity.

¶ 20    The UCCJEA covers a wide variety of child-custody matters, defined as child-custody determinations and child-custody proceedings.  *M.M.V.*, ¶ 17.  The UCCJEA defines a child-custody determination as "a judgment, decree, or other order of a court providing for the legal custody or physical custody of a child or allocating parental responsibilities with respect to a child or providing for visitation, parenting time, or grandparent or great-grandparent visitation with respect to a child." § 14-13-102(3).  A child-custody proceeding is "a proceeding in which legal custody or physical custody with respect to a child or the allocation of parental responsibilities with respect to a child or visitation, parenting time, or grandparent or great-grandparent visitation with respect to a child is an issue."  § 14-13-102(4).

¶ 21    A paternity determination, standing alone, does not fall within the definition of a child-custody determination.  A paternity

9

determination decides who will be a child's legal parent. *See N.A.H.*, 9 P.3d at 359. But it does not address issues concerning custody of the child, an allocation of parental responsibilities, visitation, or parenting time. And the UCCJEA expressly provides that a child-custody determination does not include an order related to child support or other monetary obligation of an individual. § 14-13-102(3).

¶ 22    True, a paternity case is one type of child-custody proceeding under the UCCJEA. § 14-13-102(4). The official comment to section 14-13-102, however, clarifies that only the custody and visitation aspects of paternity cases are child-custody proceedings subject to the UCCJEA. § 14-13-102 cmt. In contrast, the UPA or, in certain circumstances, the Uniform Interstate Family Support Act governs the determinations of paternity and child support. *See id.*; *see also DeWitt v. Lechuga*, 393 S.W.3d 113, 117 (Mo. Ct. App. 2013).

¶ 23    As a result, the UCCJEA does not limit a court's jurisdiction to determine paternity or order child support. *See In re Marriage of Richardson*, 102 Cal. Rptr. 3d 391, 393 (Ct. App. 2009) (holding that the UCCJEA does not limit jurisdiction over child support

orders); *DeWitt*, 393 S.W.3d at 118-20 (holding that the court could make a paternity determination when the child was conceived in the state even though it lacked jurisdiction to make a child-custody determination under the UCCJEA); *Harshberger v. Harshberger*, 724 N.W.2d 148, 156 (N.D. 2006) (recognizing that courts have construed the UCCJEA as applying to paternity cases only when custody or visitation is an issue).

### E.  Jurisdiction to Determine Custody

¶ 24     We must next decide whether the juvenile court properly determined that it lacked jurisdiction to make an initial child-custody determination.

¶ 25     The UCCJEA defines a child as "an individual who has not attained eighteen years of age." § 14-13-102(2).  And recall that, when a child is less than six months of age, the child's home state is the state in which the child has lived "from birth." § 14-13-102(7)(a).

¶ 26     When interpreting these provisions, we look to guidance provided by other states because, if a statute has been adopted from a uniform law, it should be construed to bring uniformity to the law in the various states that adopt it.  *See In Interest of R.L.H.*,

942 P.2d 1386, 1388 (Colo. App. 1997). Indeed, in the UCCJEA, our legislature has explicitly directed courts to consider "the need to promote uniformity of the law with respect to its subject matter among states that enact it." § 14-13-401, C.R.S. 2019. Moreover, the Uniform Law Commission promulgated the UCCJEA for the key purpose of creating consistency in interstate child-custody jurisdiction and enforcement proceedings. *M.M.V.*, ¶ 16.

¶ 27    Other state courts interpreting these same provisions have concluded that the UCCJEA does not provide a jurisdictional basis to make a child-custody determination concerning an unborn child or a child who has never resided in the state. *See Gray v. Gray*, 139 So. 3d 802, 806 (Ala. Civ. App. 2013); *Ark. Dep't of Human Servs. v. Cox*, 82 S.W.3d 806, 813 (Ark. 2002); *Fleckles v. Diamond*, 35 N.E.3d 176, 184 (Ill. App. Ct. 2015); *Sara Ashton McK. v. Samuel Bode M.*, 974 N.Y.S.2d 434, 435 (App. Div. 2013); *Mireles v. Veronie*, ___ N.E.3d ___, ___, 2020 WL 2652274 (Ohio Ct. App. 2020); *Waltenburg v. Waltenburg*, 270 S.W.3d 308, 316 (Tex. App. 2008); *In re Custody of Kalbes*, 733 N.W.2d 648, 650 (Wis. Ct. App. 2007).

¶ 28    For instance, the Alabama Court of Civil Appeals explained that an unborn child cannot have a home state as the child has not

12

"lived from birth" in any state. *Gray*, 139 So. 3d at 806. The Wisconsin Court of Appeals similarly reasoned that, although a child was conceived in Idaho and the father filed for divorce from the mother in Idaho before the child's birth, Wisconsin was the child's home state under the UCCJEA because the child had been born in that state and had lived there from birth. *Kalbes*, 733 N.W.2d at 650. Likewise, in interpreting the UCCJEA's predecessor, the Arizona Court of Appeals observed that the statute did not contemplate the in utero period of time in determining a child's home state. *In re Marriage of Tonnessen*, 941 P.2d 237, 239 (Ariz. Ct. App. 1997).

¶ 29 We recognize that the Kentucky Court of Appeals has reached a different conclusion. In interpreting UCCJEA's predecessor, the court held that, when a marriage dissolution petition was filed in Kentucky before a child's birth, the child did not have a home state as the time of the commencement of the proceedings. Yet, the court concluded that, although the child was later born in Ohio, Kentucky remained the proper forum to litigate child-custody issues under other jurisdictional provisions of the statute. *Gullett v. Gullett*, 992 S.W.2d 866, 869-71 (Ky. Ct. App. 1999). We do not

13

believe this holding comports with the UCCJEA's preference for home state jurisdiction based on where a newborn child has lived since birth. *See also Waltenburg,* 270 S.W.3d. at 317 (disagreeing with *Gullett*). Therefore, we agree with the majority of state courts that have concluded that the UCCJEA does not provide a jurisdictional basis to make a child-custody determination concerning an unborn child.

¶ 30 In fact, father agrees that the UCCJEA relies on a "home state analysis after the child is born" and there "cannot be a home state for an unborn child." Even so, father asserts that the UPA itself provides jurisdiction to make a child-custody determination in this case because the UPA expressly allows a court to establish its jurisdiction before a child is born. We reject this argument for two reasons.

¶ 31 First, the provisions governing initial child-custody determinations under the UCCJEA provide the "exclusive jurisdictional basis for making a child-custody determination by a court of this state." § 14-13-201(2). Thus, before a juvenile court may make a custody determination (including an allocation of parental responsibilities) in a paternity case, it must also obtain

14

jurisdiction under the UCCJEA. *See Nistico*, 791 P.2d at 1129 (recognizing that a custodial dispute arising in a UPA action was governed by the predecessor to the UCCJEA); *see also People in Interest of M.S.*, 2017 COA 60, ¶¶ 22-23 (holding that, in a dependency and neglect proceeding, the juvenile court had to follow the procedures set forth in the UCCJEA to acquire jurisdiction before it could issue a custody order); *In re Marriage of Pritchett*, 80 P.3d 918, 920 (Colo. App. 2003) (recognizing that a court had jurisdiction to make an initial child-custody determination in a dissolution of marriage proceeding when Colorado was the children's home state under the UCCJEA). Stated differently, the jurisdictional requirements of the UCCJEA apply to child-custody determinations regardless of the statute under which the proceeding was commenced. *See Mireles*, ___ N.E.3d at ___, 2020 WL 2652274.

¶ 32    Second, while section 19-4-105.5(3) provides that a paternity case may be commenced "prior to a child's birth," the UPA contains no provision authorizing a court to make a custody determination or an allocation of parental responsibilities concerning an unborn child. Indeed, the temporary restraining order provision provides

15

that each party is restrained from removing a "minor child." § 19-4-105.5(5)(c)(I)(B). Similarly, section 19-4-116(3)(a) authorizes the court to enter a judgment with a provision allocating parental responsibilities "with respect to the child" and parenting time privileges "with the child." And section 19-4-130(1) states that, as soon as practicable, the court shall enter a temporary or permanent order that allocates the decision-making responsibility and parenting time "of the child."

¶ 33    Similar to the UCCJEA, the Children's Code defines a child as a "person under eighteen years of age." § 19-1-103(18), C.R.S. 2019. This definition of a child applies only to a child after birth. *See People in Interest of H.*, 74 P.3d 494, 495 (Colo. App. 2003) (holding that, after amending the applicable definition to remove any reference to an unborn child, the General Assembly intended to have the definition apply only to a child after birth); *cf. People v. Estergard*, 169 Colo. 445, 448-50, 457 P.2d 698, 699-700 (1969) (concluding that the prior definition of a child as a person under eighteen "unless the context otherwise requires" included an unborn child for purposes of determining paternity and support).

¶ 34    Nor are we persuaded by father's arguments that the juvenile court erred by relying on *Nistico* and *Tonnessen*. In *Nistico*, our supreme court recognized that the determination of a child's home state is based on where the child has lived since birth. 791 P.2d at 1131. And in *Tonnessen,* a division of this court likewise concluded that the trial court lacked jurisdiction to determine custody of a child who had never resided in Colorado and had another home state. 937 P.2d at 865.

¶ 35    Father asserts that *Nistico* and *Tonnessen* are not instructive where, as here, the paternity case was initiated before the child's birth. We disagree. While a paternity case may be initiated before a child's birth, the home-state determination must be deferred until the child's birth and the child's birth state becomes the home state. *Fleckles*, 35 N.E.3d at 187-88. In other words, a court does not acquire jurisdiction to make a child-custody determination simply because a proceeding is initiated before the child's birth and the court has jurisdiction over the parents. *See Mireles*, ___ N.E.3d at ___, 2020 WL 2652274 (rejecting the father's claim that jurisdiction over an unborn child was automatically established with the filing of the complaint for divorce because the trial court had jurisdiction

over the mother); *see also Arnold v. Price*, 365 S.W.3d 455, 460-61 (Tex. App. 2011) (rejecting the father's contention that the trial court had subject matter jurisdiction over child-custody issues concerning an unborn child because the UCCJEA does not apply to unborn children and jurisdiction was proper as to the mother).

¶ 36    As a result, the principles articulated in *Nistico* and *Tonnessen* — a child's home state is based on where the child has lived since birth and a court generally lacks jurisdiction to determine custody of a child who has another home state and has never lived in Colorado — hold true regardless of whether a paternity proceeding is initiated before or after a child's birth.

¶ 37    Father also claims that "the law specifically does not provide for the scenario presented in th[is] case" because mother "was enjoined from leaving the state with the minor child" and Colorado surely would have jurisdiction if mother had obeyed the injunction. But, as the juvenile court recognized, section 19-4-105.5(5)(c)(I)(B) restrains a parent from removing a *child* from the state — it does not apply to an unborn child.  Indeed, the Children's Code contains no provision "designed to restrict the conduct of a pregnant woman."  *H.,* 74 P.3d at 496.

¶ 38 In his reply brief, father expounds on his position. He claims that a court has jurisdiction to issue the injunction when the paternity case is filed, but the injunction does not come into force until the child is born. According to father, the injunction does not restrain a pregnant mother from leaving the state, but the mother would be in violation of the injunction once the child was born in another state. An injunction restraining a party from *removing* a child from Colorado, however, would not apply to a child who was born in another state and has never been in Colorado.

¶ 39 Father further asserts that the UPA must allow for expanded jurisdiction beyond the UCCJEA because otherwise it would be impossible for any court to acquire jurisdiction in a paternity action before a child was born, even where the action did not address parenting time or decision-making responsibility. As discussed, however, the UCCJEA does not limit a court's jurisdiction to make a paternity determination or order child support. Rather, the UCCJEA applies to child-custody or visitation aspects of paternity cases. § 14-13-102 cmt.; *see also M.M.V.*, ¶ 17.

¶ 40　For these reasons, we hold that the juvenile court properly concluded that it lacks jurisdiction to make an initial child-custody determination.

## F.  Mandatory Injunction

¶ 41　Finally, father contends that the juvenile court erred by addressing whether mother had violated the temporary injunction because that issue was not part of the magistrate's ruling and was unnecessary to address the jurisdictional determination.  But the magistrate explicitly noted that, after the injunction had been issued, mother moved to New Hampshire without permission.  In context, this was effectively a determination that the injunction applied to an unborn child and mother had violated it.

¶ 42　Mother presented this issue to the juvenile court in her motion for review under section 19-1-108(5.5), C.R.S. 2019.  Accordingly, the court properly reviewed that aspect of the magistrate's ruling.

## III.  Attorney Fees

¶ 43　Mother requests attorney fees under section 14-10-119, C.R.S. 2019.  Section 14-10-119, however, does not govern the award of attorney fees in a paternity proceeding brought under the Children's Code.  *See In re Parental Responsibilities Concerning N.J.C.*, 2019

COA 153M, ¶¶ 43-44, 50 (applying section 19-4-117, C.R.S. 2019, to an attorney fee request in a paternity proceeding and comparing its differences to an award under section 14-10-119). Consequently, we deny mother's request.

## IV.  Conclusion

¶ 44    The judgment is affirmed.

JUDGE FOX and JUDGE BROWN concur.