Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 1, 2021

**2021 CO 38**

**No. 20SC314, *People in Int. of S.A.G.*—Dependency & Neglect—Termination of Parental Rights—The Uniform Child-custody Jurisdiction and Enforcement Act.**

At the end of a dependency and neglect case, a juvenile court terminated parents' legal relationship with their son. A division of the court of appeals vacated the termination order, holding that the juvenile court lacked subject matter jurisdiction under the temporary emergency and non-emergency jurisdiction provisions of the Uniform Child-custody Jurisdiction and Enforcement Act ("UCCJEA"). Further, the division held that, to acquire non-emergency jurisdiction on remand, the juvenile court must ask an Arkansas court to decline jurisdiction.

The supreme court affirms in part and reverses in part. The division correctly vacated the termination order. The juvenile court did not have temporary emergency jurisdiction when it entered the termination order, and non-emergency jurisdiction was impossible without an analysis of whether Arkansas

still had home-state jurisdiction.  But whether the juvenile court will need to contact an Arkansas court will depend on the results of the jurisdictional factfinding on remand.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2021 CO 38

### Supreme Court Case No. 20SC314

*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 19CA991

### Petitioners:

The People of the State of Colorado,

In the Interest of Minor Child: S.A.G.;

and

S.A.G., Minor Child,

v.

### Respondents:

B.A.G. and A.W.D.

### Judgment Affirmed in Part and Reversed in Part

*en banc*
June 1, 2021

**Attorneys for Petitioner the People of the State of Colorado:**
Denver City Attorney's Office
Kristin M. Bronson, Denver City Attorney
Laura Grzetic Eibsen, Assistant City Attorney
Tierney A. Shea, Assistant City Attorney
        *Denver, Colorado*

**Attorneys for Petitioner S.A.G.:**
Law Office of Gina G. Bischofs, P.C.
Gina G. Bischofs, Guardian ad litem
    *Arvada, Colorado*

**Attorneys for Respondent B.A.G.:**
Henson Law, LLC
Chelsea A. Carr
Patrick R. Henson
    *Denver, Colorado*

**Attorney for Respondent A.W.D.:**
Susan C. Baker
    *El Prado, New Mexico*

**JUSTICE HOOD** delivered the Opinion of the Court.

¶1 The night before S.A.G.'s third birthday, he crossed a street alone and wandered into a gas station parking lot. The police found him inside, by the refrigerator section, and took him into protective custody. S.A.G.'s family had arrived in Colorado only a few weeks prior, and his parents insist that they were temporarily visiting from Arkansas, where they have since returned. A Colorado juvenile court asserted jurisdiction over the resulting dependency and neglect proceeding and eventually terminated the legal relationship between S.A.G. and his parents.

¶2 This opinion, announced the same day as *People in Interest of B.H.*, 2021 CO 39, __ P.3d __, addresses when Colorado courts have the power to terminate parental rights if Colorado isn't a child's home state. That jurisdictional question turns on how we interpret Colorado's codification of the Uniform Child-custody Jurisdiction and Enforcement Act ("UCCJEA").

¶3 A.W.D. ("mother") and B.A.G. ("father") argue that the juvenile court lacked jurisdiction when it terminated their parental relationships with S.A.G. A division of the court of appeals agreed, reasoning that the UCCJEA's temporary emergency jurisdiction provision did not authorize the termination order. The division also concluded that the juvenile court had not acquired UCCJEA initial custody (non-emergency) jurisdiction because the court had not communicated

with any court from S.A.G.'s home state and, therefore, no home-state court had declined jurisdiction.

¶4 We affirm in part on other grounds and reverse in part. In keeping with the plain language of the statute, we hold that UCCJEA temporary emergency jurisdiction exists only to protect abandoned children or to prevent mistreatment or abuse in emergencies. The juvenile court did not have temporary emergency jurisdiction when it terminated parental rights here because S.A.G. was not then abandoned and no emergency then existed. Thus, the division was right to vacate the termination judgment. However, the division erred by requiring the juvenile court to communicate with an Arkansas court without further analysis. Since it is possible but not certain that Arkansas had home-state jurisdiction over S.A.G. on the date of the termination order, we conclude that the juvenile court should have conducted a full analysis of its non-emergency jurisdiction, including the requisite factfinding. The results of that analysis will dictate whether the juvenile court must contact an Arkansas court on remand.

## I. Facts and Procedural History

¶5 On November 15, 2017, a woman spotted a toddler, S.A.G., crossing the street alone and then entering a gas station parking lot. Denver police found the child inside the gas station, dirty but unharmed.

4

¶6 They searched the area and, at the motel across the street, they were flagged down by S.A.G.'s parents. His mother said that she had fallen asleep with S.A.G. in her arms around 9:30 p.m. in their motel room. His father reported that he had left the room to buy a drink from a vending machine and S.A.G. was missing when he returned.

¶7 The police thought that mother and father were behaving hysterically and suspected that father was high. The officers asked to search the motel room. Father refused to let the police inspect the entire room—he claims they were being rude—so the police sent S.A.G. to the hospital instead of returning him.

¶8 The next day, Denver Human Services ("DHS") placed S.A.G. with a foster family. At a family crisis center, mother tested positive for methamphetamine and the police arrested father on an out-of-state warrant.

¶9 Two days after the gas station incident, DHS filed a petition pursuant to section 19-3-502, C.R.S. (2020), alleging that S.A.G. was dependent or neglected. The parents conceded that S.A.G.'s environment was injurious to his welfare, so the juvenile court adjudicated him dependent and neglected. *See* § 19-3-505(7)(a), C.R.S. (2020). The court ordered parents to comply with treatment plans per section 19-3-508(1)(e)(I), C.R.S. (2020).

¶10 DHS filed a motion to terminate mother's and father's parental rights in September 2018, citing insufficient compliance with the plans. *See* § 19-3-602,

C.R.S. (2020). After a six-day trial that stretched from November 2018 to April 2019, the juvenile court terminated the parents' relationship with S.A.G. because they hadn't reasonably complied with their plans, they were unfit parents, and they wouldn't become fit within a reasonable time. *See* § 19-3-604(1)(c), C.R.S. (2020).

¶11 According to parents, one obstacle to compliance with their Colorado treatment plans was geographic — they live in Arkansas and were in Colorado only temporarily. The record offers conflicting explanations for why they were in Colorado but suggests that they had been here for only a few weeks before the police found S.A.G. at the gas station. S.A.G. was born in Illinois but otherwise lived his entire life in Arkansas until his parents brought him to Colorado.

¶12 The juvenile court knew from the outset that S.A.G. and his parents were from another state. At the first hearing, mother's attorney told the court that mother "does not reside here. . . . [H]er residence is in Arkansas." At another early hearing, mother reiterated, "I currently permanently reside in Arkansas. And this is affecting my home life there, being here, spending money in hotels, having to work day-to-day just to make stuff meet . . . ." Similarly, father's counsel told the court that "parents have been clear . . . since this case opened that they were in Colorado temporarily[,] that Arkansas was their home where all of their

6

supports are, and they wanted to get back there as soon as possible because they didn't think they could get stable here."

¶13 Despite this jurisdictional issue, the juvenile court did not explicitly discuss the UCCJEA until May 2018, six months into this proceeding. When father's attorney then told the court that "Arkansas was [S.A.G.'s] home state" and asked "if there's any way to transfer jurisdiction," the court agreed that "we're not the home state" but decided that "[w]e wouldn't be able to transfer jurisdiction since there was no case open in Arkansas." The court concluded that it had jurisdiction because "[i]t's only if we end with anything other than a termination that we wouldn't have jurisdiction, is my understanding."

¶14 The UCCJEA issue emerged for a second and final time when DHS announced it would seek to terminate mother's and father's parental rights. DHS advised the court that, to comply with the UCCJEA, the court needed to ask parents whether S.A.G. had been the subject of any prior custody proceedings. Parents informed the court that this was the first. The court entered an oral termination order on April 19, 2019, concluding that "the child is within the jurisdiction of Denver Juvenile Court due to the fact that the incident that brought this to the attention of the department occurred in Denver." It issued a written order several weeks later.

¶15 On appeal, father argued that the juvenile court lacked subject matter jurisdiction under the UCCJEA when it terminated his parental rights. *People in Int. of S.A.G.*, 2020 COA 45, ¶ 12, __ P.3d __.

¶16 A division of the court of appeals agreed, reasoning that, to terminate parental rights pursuant to temporary emergency jurisdiction, "(1) the order [must] state[] that it will become final and (2) Colorado [must] become[] the child's home state." *Id.* at ¶ 25. Because neither condition had been met, "the juvenile court lacked jurisdiction to terminate parental rights under temporary emergency jurisdiction." *Id.* at ¶¶ 25–26, 28.

¶17 Looking for other jurisdictional hooks, the division turned to non-emergency UCCJEA jurisdiction, which can be achieved four different ways: "home-state" jurisdiction, "significant-connection" jurisdiction, "more-appropriate-forum" jurisdiction, and "last-resort" jurisdiction. *Id.* at ¶¶ 20, 26. The division concluded that, when the case began, Arkansas, not Colorado, was S.A.G.'s home state, so the juvenile court didn't have home-state or last-resort jurisdiction. *Id.* at ¶ 28. The division also rejected significant-connection and more-appropriate-forum jurisdiction because those "require that a home state court decline jurisdiction before another state's court can invoke it" but "no affirmative act ha[d] been taken to communicate with a court" in Arkansas. *Id.* at ¶¶ 29–30.

¶18    Having ruled out every possible source of jurisdiction, the division vacated the termination judgment and ordered the juvenile court to try to obtain significant-connection or more-appropriate-forum jurisdiction by contacting an Arkansas court. *Id.* at ¶ 37.

¶19    We granted the People and the guardian ad litem's ("GAL") joint petition for certiorari to review the division's judgment that the juvenile court lacked subject matter jurisdiction under the UCCJEA when it issued the termination order.[1]

## II. Analysis

¶20    After identifying the standard of review, we examine the purpose and structure of the UCCJEA. Then, we consider whether the juvenile court had either temporary emergency or non-emergency jurisdiction under the UCCJEA when it terminated mother's and father's parental rights. Finally, we also offer some guidance on when and how juvenile courts must contact out-of-state courts when seeking to acquire non-emergency jurisdiction.

---

[1] We granted certiorari to review the following issue:

> Whether the court of appeals erred in its analysis of the Uniform Child-custody Jurisdiction and Enforcement Act ("UCCJEA") in concluding that the trial court did not have subject matter jurisdiction pursuant to the UCCJEA to enter its judgment and order terminating Father's and Mother's parental rights to the child, S.A.G.

## A. Standard of Review

¶21 "Whether a trial court has jurisdiction over a child custody proceeding presents a question of law, which we review de novo." *Brandt v. Brandt*, 2012 CO 3, ¶ 18, 268 P.3d 406, 410. But "[a]ny factual dispute upon which the existence of jurisdiction may turn is for the trial court to resolve, and an appellate court may not disturb the factual findings of the trial court unless they are clearly erroneous." *CAMAS Colo., Inc. v. Bd. of Cnty. Comm'rs*, 36 P.3d 135, 138 (Colo. App. 2001).

## B. The UCCJEA

¶22 "A court has subject-matter jurisdiction if 'the case is one of the type of cases that the court has been empowered to entertain by the sovereign from which the court derives its authority.'" *Horton v. Suthers*, 43 P.3d 611, 615 (Colo. 2002) (quoting *Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508, 513 (Colo. 1986)). In Colorado, "[t]rial courts . . . are courts of general [subject matter] jurisdiction" and their "'unrestricted and sweeping jurisdictional powers' are only limited by . . . 'statute or constitutional provision.'" *Currier v. Sutherland*, 218 P.3d 709, 712 (Colo. 2009) (quoting *Matter of A.W.*, 637 P.2d 366, 373 (Colo. 1981)).

¶23 The UCCJEA is one such limiting statute: It "prescribes the circumstances under which jurisdiction that otherwise is conferred by constitution or statute can be exercised in a given case." *In re Teagan K.-O.*, 242 A.3d 59, 79 (Conn. 2020). Colorado enacted the UCCJEA, in part, "to avoid jurisdictional competition over

10

child custody matters in an increasingly mobile society." *People in Int. of A.B-A.*, 2019 COA 125, ¶ 10, 451 P.3d 1278, 1282.  To accomplish this, "the UCCJEA sets out a detailed and comprehensive framework that a court must use to determine whether it may exercise jurisdiction in a child custody matter, or whether it may (or, in some cases, must) defer to a court of another state." *People in Int. of C.L.T.*, 2017 COA 119, ¶ 16, 405 P.3d 510, 513.  Every state has adopted the UCCJEA except Massachusetts. *In re J.W.*, 267 Cal. Rptr. 3d 554, 558 (Cal. Ct. App. 2020).

¶24    The UCCJEA offers Colorado courts two ways to employ their power to first issue a "child-custody determination," which the statute defines very broadly as any "judgment, decree, or other order of a court providing for the legal custody or physical custody of a child or allocating parental responsibilities . . . or providing for visitation [or] parenting time," including "a permanent, temporary, initial, [or] modification order."  § 14-13-102(3), C.R.S. (2020).

¶25    The first is *temporary emergency* jurisdiction, which is available whenever a child is in Colorado and is either "abandoned" or jurisdiction is "necessary in an emergency to protect the child because the child . . . is subjected to or threatened with mistreatment or abuse."  § 14-13-204(1), C.R.S. (2020).

11

¶26　Second, when those conditions aren't met, a court can assert *non-emergency* jurisdiction "only if" it successfully navigates one of the four paths to jurisdiction from section 14-13-201(1), C.R.S. (2020):[2]

- *Home-state jurisdiction*: A court has home-state jurisdiction if Colorado was "the home state of the child [at] the commencement of the proceeding." § 14-13-201(1)(a). "'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least [182] consecutive days immediately before the commencement of a child-custody proceeding," and includes any "period of temporary absence." § 14-13-102(7)(a). Home-state jurisdiction also exists "if the child lived in [Colorado] for a consecutive [182-day] period . . . at any time during the [182 days] before the filing of the custody proceeding" and the child is absent from Colorado but a parent (or person acting as parent) still lives here. *In re Parental Resps.*

---

[2] Section 14-13-201(1) doesn't reference "non-emergency" jurisdiction; rather, it discusses jurisdiction to "make an initial child-custody determination," which means "the first child-custody determination concerning a particular child," § 14-13-102(8). But section 14-13-201(1)'s four paths to jurisdiction are also applicable in a case like this where the first child-custody determination was entered pursuant to temporary emergency jurisdiction but that jurisdiction has lapsed. If "[a] court of this state . . . has made a child-custody determination and does not have [the] exclusive, continuing jurisdiction" that results from having made that determination pursuant to section 14-13-201(1), the court "may modify that determination only if it has jurisdiction to make an initial determination under section 14-13-201." § 14-13-202(2), C.R.S. (2020); *see also In re Aiden L.*, 224 Cal. Rptr. 3d 400, 408 (Cal. Ct. App. 2017) ("If a California court has exercised temporary emergency jurisdiction . . . , that court may not . . . make a final child custody determination until it properly asserts jurisdiction under the nonemergency jurisdiction provisions of the UCCJEA."). Therefore, we refer to the jurisdiction granted by section 14-13-201(1) as "non-emergency jurisdiction," rather than "initial-custody-determination jurisdiction."

12

*Concerning L.S.*, 257 P.3d 201, 208 (Colo. 2011); *see also* § 14-13-201(1)(a).

- *Significant-connection jurisdiction*: A court has significant-connection jurisdiction if "[t]he child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with [Colorado] other than mere physical presence"; "[s]ubstantial evidence is available in [Colorado] concerning the child's" welfare; and either no court of another state has home-state jurisdiction or a court of the home state "has declined to exercise jurisdiction on the ground that [Colorado] is the more appropriate forum." § 14-13-201(1)(b).

- *More-appropriate-forum jurisdiction*: A court can assert more-appropriate-forum jurisdiction if all courts having home-state jurisdiction or significant-connection jurisdiction "have declined to exercise jurisdiction on the ground that [Colorado] is the more appropriate forum." § 14-13-201(1)(c).

- *Last-resort jurisdiction*: A court has last-resort jurisdiction when "[n]o court of any other state would have [home-state, significant-connection, or more-appropriate-forum] jurisdiction." § 14-13-201(1)(d).

## C. Temporary Emergency Jurisdiction

¶27    The People and the GAL argue that the juvenile court had temporary emergency jurisdiction when it terminated mother's and father's parental rights. They rely on section 14-13-204(2)'s statement that an order issued during temporary emergency jurisdiction can ripen into a "final determination" if the child hasn't been the subject of a previous child-custody determination and no other child-custody proceedings exist.

¶28    Father endorses the division's holding that the juvenile court didn't have temporary emergency jurisdiction because the termination order didn't satisfy section 14-13-204(2)'s two requirements for becoming a "final determination"; namely, the order didn't say it would become a final determination and Colorado never became S.A.G.'s home state.   Mother also argues that there was no temporary emergency jurisdiction, but she focuses on the fact that the court accepted her and father's assurances that this was the first proceeding instead of checking with an Arkansas court.

¶29    We agree with parents that the juvenile court did not have temporary emergency jurisdiction, but for a different reason.  We conclude that the court lacked temporary emergency jurisdiction because, at the time of the termination order, S.A.G. was not abandoned and there was no emergency.

¶30    "A court of this state has temporary emergency jurisdiction [only] if the child is present in [Colorado] and the child has been abandoned or it is necessary in an emergency to protect the child because the child . . . is subjected to or threatened with mistreatment or abuse."   § 14-13-204(1).   Therefore, temporary emergency jurisdiction "continues 'only for as long as the emergency exists'" or the child remains abandoned.  *Beauregard v. White*, 972 A.2d 619, 626 (R.I. 2009) (quoting *Nadeau v. Nadeau*, 716 A.2d 717, 725 (R.I. 1998)); *see also A.B-A.*, ¶¶ 12–13, 451 P.3d at 1283 ("[A] Colorado court may exercise temporary emergency

14

jurisdiction to protect a child who is present in Colorado from mistreatment, abuse, or abandonment. . . . But this temporary emergency jurisdiction under the UCCJEA is limited in scope and in time." (citations omitted)); *In re C.T.*, 121 Cal. Rptr. 2d 897, 908 (Cal. Ct. App. 2002) ("[When] the emergency ended, . . . the California court was correct in terminating jurisdiction."); *In re J.C.*, 832 S.E.2d 91, 100 n.28 (W. Va. 2019) ("Under the facts of the instant case, the circuit court's temporary emergency jurisdiction ended when [the Department of Health and Human Resources] filed the abuse and neglect petition.").

¶31 "'Abandoned' means left without provision for reasonable and necessary care or supervision." § 14-13-102(1). Although S.A.G. arguably was abandoned when he wandered across the street in November 2017, nothing in the record suggests he lacked reasonable and necessary care when the court issued its termination order in April 2019. By then, S.A.G. had been living for over a year with a foster family that, according to DHS and the GAL, was meeting his needs.

¶32 Nor, at the time of termination, was jurisdiction "necessary in an emergency to protect [S.A.G.] because the child . . . [was] subjected to or threatened with mistreatment or abuse." § 14-13-204(1). The UCCJEA doesn't define "emergency," so we look to "the common usage" as we've done when other statutes "failed to explicitly define" the same word: "1: an unforeseen combination of circumstances or the resulting state that calls for immediate action 2: a pressing

15

need: EXIGENCY." *Fogg v. Macaluso*, 892 P.2d 271, 274 (Colo. 1995) (quoting *Emergency*, Webster's Seventh New Collegiate Dictionary (1963)). Although an emergency may have existed when the police found S.A.G. at the gas station, the record contains no evidence of unforeseen circumstances calling for immediate action when the court issued its termination order fifteen months later. *See C.T.*, 121 Cal. Rptr. 2d at 908 ("[T]he custody order . . . removed the risk C. would be sexually abused . . . . At that time, the emergency ended . . . .").

¶33 Indeed, some courts have held that "a Colorado court exercising temporary emergency jurisdiction may not enter a permanent custody disposition" like termination of parental rights. *A.B-A.*, ¶ 13, 451 P.3d at 1283; *accord People in Int. of M.C.*, 94 P.3d 1220, 1225 (Colo. App. 2004) ("Assumption of emergency jurisdiction does not confer upon the state exercising emergency jurisdiction the authority to make a permanent custody disposition." (quoting *C.T.*, 121 Cal. Rptr. 2d at 904)); *see also In re NC*, 294 P.3d 866, 876 (Wyo. 2013) ("Emergency jurisdiction under the UCCJEA . . . does not include the authority to make permanent custody determinations." (citation omitted)); *In re Gino C.*, 169 Cal. Rptr. 3d 193, 197 (Cal. Ct. App. 2014) ("[T]emporary emergency jurisdiction does not confer authority to make a permanent child custody determination."). But we need not, and therefore do not, go that far to resolve this case.

¶34     Given the limited scope of section 14-13-204(1)—abandonment and emergencies—we disagree with the division's statement that the juvenile court could have terminated parents' rights pursuant to temporary emergency jurisdiction if only (1) the order had a proviso saying it would become a final determination if Colorado became S.A.G.'s home state and (2) Colorado became his home state. *See S.A.G.*, ¶ 25. Section 14-13-204(2) says that, if no custody proceedings are pending in other states, "a child-custody determination made under [temporary emergency jurisdiction] becomes a final determination, if it so provides and [Colorado] becomes the home state of the child." But section 14-13-204(2) does not expand section 14-13-204(1)'s exhaustive list of circumstances that create temporary emergency jurisdiction.

¶35     Thus, section 14-13-204(2)'s reference to final determinations does not permit courts to terminate parental rights pursuant to temporary emergency jurisdiction in the absence of a continuing abandonment or emergency. Since the juvenile court did not have temporary emergency jurisdiction under section 14-13-204(1) when it terminated mother's and father's parental rights, we must now examine whether it had non-emergency jurisdiction through section 14-13-201(1).

17

## D. Non-Emergency Jurisdiction

¶36 The juvenile court did not conduct a non-emergency UCCJEA jurisdictional analysis beyond concluding that "we're not the home state" and asking parents about out-of-state proceedings. Although the People and the GAL focus their arguments on temporary emergency jurisdiction, we understand them to argue that Arkansas ceased to have home-state jurisdiction over S.A.G. and, if the juvenile court needed non-emergency jurisdiction, then the termination order was proper if the record reveals that the court impliedly asserted it. The parents agree with the division that, because Arkansas was S.A.G.'s home state, the juvenile court couldn't have had non-emergency jurisdiction because it never contacted an Arkansas court.

¶37 We agree with the parents on a more limited basis. We agree that the juvenile court did not properly assert any form of non-emergency jurisdiction before terminating their parental rights, but we think that the division mistakenly focused on whether Arkansas had home-state jurisdiction when the Colorado case began. *See S.A.G.*, ¶ 28. In the circumstances of this case, the proper inquiry is whether Arkansas still had home-state jurisdiction when the juvenile court issued the termination order. Whether Arkansas had home-state jurisdiction then depends on whether S.A.G.'s time in DHS custody was a temporary absence from

18

Arkansas, a mixed question of law and fact that the juvenile court must answer in the first instance.

¶38 Recall our four paths to non-emergency jurisdiction; the first is home-state jurisdiction, and a home state is where "a child lived with a parent or a person acting as a parent for at least one hundred eighty-two consecutive days immediately before the commencement of a child-custody proceeding," inclusive of any "period of temporary absence." § 14-13-102(7)(a).

¶39 As the juvenile court recognized, Colorado wasn't S.A.G.'s home state because he had lived here for less than three weeks before DHS started this proceeding. *See* § 14-13-201(1)(a). Thus, the division correctly held that the juvenile court didn't have home-state jurisdiction.[3] *See S.A.G.*, ¶ 28.

¶40 But the division erred when it concluded that "Arkansas meets the definition of home state" and that, therefore, last-resort jurisdiction was

---

[3] DHS's termination motion did not start a new "proceeding" for purposes of assessing home-state status. Some courts have held that "[a] termination of parental rights proceeding is not simply a continuation of a dependent-neglect proceeding" but is instead "new and separate." *In re M.J.B.*, 140 S.W.3d 643, 651 (Tenn. Ct. App. 2004). But, in Colorado, a motion to terminate parental rights after a child has been adjudicated dependent and neglected is a request for a remedy, not the start of a second proceeding. *See* § 19-3-502(3)(a) (requiring all dependency and neglect petitions to state that "[t]ermination of the parent-child legal relationship is a possible remedy available if this petition alleging that a child is dependent or neglected is sustained").

impossible and the juvenile court couldn't have significant-connection or more-appropriate-forum jurisdiction because it didn't ask an Arkansas court to decline jurisdiction. *Id.* at ¶¶ 29–30.

¶41 While the record suggests that Arkansas was the home state in November 2017, the juvenile court's ability to enter a termination order pursuant to significant-connection, more-appropriate-forum, and last-resort jurisdiction turns on whether Arkansas *still* has home-state jurisdiction. A Colorado court can assert significant-connection jurisdiction if "[a] court of another state does not *have* jurisdiction under a provision of law adopted by that state" granting home-state jurisdiction. § 14-13-201(b) (emphasis added). More-appropriate-forum jurisdiction is available when "[a]ll courts *having* [home-state or significant-connection jurisdiction] under a provision of law adopted by that state . . . have declined to exercise jurisdiction." § 14-13-201(c) (emphasis added). And last-resort jurisdiction requires that "[n]o court of any other state would *have* jurisdiction under the criteria specified in a provision of law adopted by that state [granting home-state, significant-connection, or more-appropriate-forum jurisdiction]." § 14-13-201(d) (emphasis added).

¶42 So, regardless of whether Arkansas had home-state jurisdiction as S.A.G.'s home state under Arkansas law when this case began, the UCCJEA asks whether Arkansas presently has home-state jurisdiction. The division's focus on whether

20

Arkansas had home-state jurisdiction when this case began is contrary to the plain text of the UCCJEA. The division's approach would also lead to the absurd result of requiring Colorado courts to ask out-of-state courts to decline jurisdiction that has already expired.

¶43 Based on the record, we cannot determine whether Arkansas had home-state jurisdiction when the juvenile court issued the April 2019 termination order. S.A.G. was living in Colorado, not Arkansas, for the six months before the order. If, hypothetically, an Arkansas agency had filed a child-welfare case in Arkansas in April 2019, the Arkansas court would have found home-state jurisdiction then only if S.A.G.'s time in Colorado had been a "period of temporary absence." *See* Ark. Code Ann. § 9-19-102(7) (West 2021) ("'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child-custody proceeding. . . . A period of temporary absence of any of the mentioned persons is part of the period."); *see also* Ark. Code Ann. § 9-19-201(a)(1) (West 2021) ("[A] court of [Arkansas] has [home-state] jurisdiction . . . if . . . this state is the home state of the child on the date of the commencement of the proceeding . . . ."). Under Arkansas law, whether an absence is temporary for purposes of maintaining Arkansas's home-state jurisdiction turns on parental "intent." *Adams v. Adams*, 432 S.W.3d 49, 58 (Ark. Ct. App. 2014).

21

¶44 When Colorado isn't the home state and an out-of-state court might have home-state jurisdiction, we have held that a trial court cannot "properly analyze whether Colorado had [non-emergency] jurisdiction based on any of the three alternative grounds" (significant-connection, more-appropriate-forum, and last-resort jurisdiction) unless it first "determine[s] whether another state would have home state jurisdiction." *Madrone v. Madrone*, 2012 CO 70, ¶ 13, 290 P.3d 478, 481. So, after the juvenile court determined that Colorado wasn't the home state, its next step should have been to determine whether "[an]other state qualified as [S.A.G.'s] home state," which would have turned on whether S.A.G.'s time in Colorado was a temporary absence from Arkansas. *Id.*

¶45 When a court commits the error of failing to analyze whether another state had home-state jurisdiction, the remedy is to "vacate the trial court's order . . . and remand [the] case for the trial court to conduct a full analysis under Colorado's UCCJEA, section 14-13-201." *Id.* at ¶ 18, 290 P.3d at 482. Since Colorado wasn't the home state but the record leaves open the possibility that Arkansas has home-state jurisdiction, the juvenile court must, on remand, conduct a full analysis of its non-emergency jurisdiction.

### E. Contacting Out-of-State Courts

¶46 We could stop our analysis here, but we are mindful that this case involves custody of a child who is now six years old and that this case has been litigated for

22

more than three years. Thus, we offer some additional guidance to the juvenile court on how to swiftly comply with the perplexing mandates of section 14-13-201(1).

¶47     When the juvenile court conducts its jurisdictional analysis on remand, it will need to look for significant-connection, more-appropriate-forum, or last-resort jurisdiction. If the juvenile court finds that Arkansas no longer has home-state jurisdiction because S.A.G.'s absence from Arkansas has not been temporary, then it can assert significant-connection jurisdiction if it also finds that S.A.G. and "[his] parents, or [S.A.G.] and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence" and "[s]ubstantial evidence is available in this state concerning the child's care, protection, training, and personal relationships." § 14-13-201(1)(b). In the absence of significant-connection jurisdiction, the juvenile court can assert last-resort jurisdiction if it finds that Arkansas has no jurisdiction. *See* § 14-13-201(1)(d).

¶48     Any other path to non-emergency jurisdiction will require the juvenile court to contact an Arkansas court and ask it to "decline[] to exercise jurisdiction." § 14-13-201(1)(b)–(c). That is to say, if the juvenile court finds that Arkansas has home-state jurisdiction, then last-resort jurisdiction becomes impossible and both significant-connection jurisdiction and more-appropriate-forum jurisdiction would require an Arkansas court to decline jurisdiction. *See* § 14-13-201(1).

¶49    If the juvenile court's jurisdiction depends on an Arkansas court declining jurisdiction, the Arkansas court can decline for a limited set of reasons: "that [Colorado] is the more appropriate forum under a provision of law adopted by [Arkansas] that is in substantial conformity with section 14-13-207 or 14-13-208." § 14-13-201(1)(b)–(c). Those two sections allow a court to decline jurisdiction if it would be an inconvenient forum, § 14-13-207, C.R.S. (2020) (listing eight factors that the court must consider), or if the "person seeking to invoke the jurisdiction . . . has engaged in unjustifiable conduct," a possibility that is not at issue here, § 14-13-208(1), C.R.S. (2020).

¶50    The word "decline" combined with an exclusive list of reasons for declining "suggest[s] that the home state must have . . . an opportunity to weigh in," *S.A.G.*, ¶ 32, and that the mere "absence of litigation" in the other state is insufficient, *id.* at ¶ 31 (quoting *Manley v. Hoag*, 917 P.2d 1011, 1014 (Okla. Civ. App. 1996)). Section 14-13-201's second comment amplifies that suggestion: "[A] significant connection State may assume jurisdiction . . . when the home State *decides* that the significant connection State would be a more appropriate forum." (Emphasis added.) The same comment also provides that Colorado courts can exercise more-appropriate-forum jurisdiction only when other courts "determine" that Colorado is the better forum. *Id.* We have previously concluded that "no state ha[d] declined jurisdiction" when no one had "invited" the other state's court to exercise

24

jurisdiction. *Madrone*, ¶ 16, 290 P.3d at 481 & n.4 ("This vehicle for jurisdiction is only available if a jurisdiction in another state *determines* that Colorado is a more appropriate forum." (emphasis added)).

¶51    Thus, we agree with those courts that have held that a court cannot decline jurisdiction unless it has been "asked." *In re Parental Resps. Concerning B.C.B.*, 2015 COA 42, ¶ 12, 411 P.3d 926, 930 ("Idaho was not asked, and therefore did not decline, to exercise its home state jurisdiction . . . ."); *see also In re J.C.*, 832 S.E.2d at 99 (holding that significant-connection jurisdiction was impossible because "the record in this case does not disclose that a 'court' in Virginia was contacted and declined to exercise jurisdiction"); *G.S. v. R.L.*, 259 So. 3d 677, 681 (Ala. Civ. App. 2018) (rejecting significant-connection and more-appropriate-forum jurisdiction because "[t]he record in these cases does not contain any order from any Tennessee court declining to exercise its home-state jurisdiction"); *In re Aiden L.*, 224 Cal. Rptr. 3d 400, 408 (Cal. Ct. App. 2017) ("[I]f the court is aware that another state . . . qualifies as the child's home state, the California court must contact the home state court to give it an opportunity to decide whether to exercise its home state jurisdiction.").

¶52    We disagree with the People and the GAL that this result conflicts with sections 14-13-110(1), C.R.S. (2020), and 14-13-204(4). Although section 14-13-110(1) states that "[a] court of this state may communicate with a court in

25

another state," that permissive language doesn't negate section 14-13-201(1)'s more specific rule that out-of-state courts must sometimes "decline[] to exercise jurisdiction" before a Colorado court can acquire non-emergency jurisdiction. And section 14-13-204(4)'s requirement that Colorado courts exercising temporary emergency jurisdiction contact out-of-state courts that have already issued a child-custody determination pursuant to non-emergency jurisdiction does not preclude court-to-court communication under other circumstances.

¶53 We now address how to ask out-of-state courts to decline jurisdiction. Although the UCCJEA is clear that an out-of-state "court" must be the one to decline jurisdiction—and not, say, an agency—it does not specify who should do the asking. *See* § 14-13-201(1). But the UCCJEA does list three ways to raise "[t]he issue of inconvenient forum," which is the only reason that an out-of-state court can decline jurisdiction in the absence of a proper case: "upon motion of a party, the court's own motion, or request of another court." § 14-13-207(1). When there is not a case in the other state, the first possibility is unavailable and the second is improbable, so it falls on the Colorado juvenile court to contact the other court. *See Gino C.*, 169 Cal. Rptr. 3d at 197 ("Since the court opted to remain passive and did

26

not contact Mexico, Mexico has not been given an opportunity to decide whether to exercise its home state jurisdiction.").[4]

¶54 The UCCJEA fails to identify which specific out-of-state court the juvenile court should contact in situations like this. *See* § 14-13-201(1). Section 14-13-209(1), C.R.S. (2020), does, however, require parties to child-custody proceedings to provide the court, in their first pleadings, with "the places where the child has lived during the last five years, and the names and present addresses of the persons with whom the child has lived during that period," as well as "the names and addresses of any person not a party to the proceeding who . . . claims rights of parental responsibilities or legal custody or physical custody." A court may also "examine the parties under oath as to . . . matters pertinent to the court's jurisdiction and the disposition of the case." § 14-13-209(3). This information will help a juvenile court identify an appropriate court.

---

[4] A division of the court of appeals held that a trial court erred when it used its clerk as an intermediary to contact a Rhode Island court to discuss jurisdiction. *People in Int. of D.P.*, 181 P.3d 403, 407 (Colo. App. 2008). We agree that a clerk is not a "court." *See* § 14-13-102(6) ("'Court' means an entity authorized under the law of a state to establish, enforce, or modify a child-custody determination."). But we do not read the UCCJEA as forbidding courts from using clerks or other staff as go-betweens to facilitate court-to-court communications. *See* § 14-13-110(1) ("A court of this state may communicate with a court in another state concerning a proceeding arising under this article.").

¶55     Further complicating matters, the UCCJEA doesn't specify how courts must decline jurisdiction.  Given that silence, we decline to require a court order. Demanding one would create the possibility of jurisdictional limbo if the other court "refuses for whatever reason to commit one way or . . . to even discuss the issue." *In re M.M.*, 192 Cal. Rptr. 3d 849, 860 (Cal. Ct. App. 2015).  Rather, after a Colorado court contacts an out-of-state court, that court can "decline[] jurisdiction in any manner that conveys its intent *not* to exercise jurisdiction over a child in connection with a child custody proceeding, including inaction *or* . . . by refusing to even discuss the issue of jurisdiction." *Id.* at 861.

¶56     But section 14-13-110 does require at least one of the two courts to make a record of the communication, successful or not, which could be as simple as "a memorandum . . . made by a court after the communication."  § 14-13-110 cmt. The Colorado court must also give the parties an "opportunity to present facts and legal arguments before a decision on jurisdiction is made" or "allow the parties to participate in the communication."  § 14-13-110(2).

¶57     Some out-of-state courts, lacking a local case, might feel that they can't weigh in or have no choice but to decline jurisdiction.  If the out-of-state court demurs because it has no open case, our juvenile court could direct it (anywhere but Massachusetts) to the other state's version of section 14-13-112, C.R.S. (2020). *See, e.g.*, Ark. Code Ann. § 9-19-112 (West 2021).  Subsection (1) empowers courts

to "request the appropriate court of another state to" take various actions, including "[h]old[ing] an evidentiary hearing," "[o]rder[ing] a person to produce or give evidence," and "[o]rder[ing] that an evaluation be made with respect to the custody or allocation of parental responsibilities with respect to a child." § 14-13-112(1). Subsection (2) authorizes a court, "[u]pon request of a court of another state," to "hold a hearing or enter an order described in subsection (1) of this section." § 14-13-112(2).

¶58 In sum, we affirm the division's holding that the juvenile court lacked temporary emergency jurisdiction at the time of termination, albeit on other grounds, and we reverse the holding that the juvenile court must contact an Arkansas court. The juvenile court lacked temporary emergency jurisdiction when it terminated mother's and father's parental rights because S.A.G. was not then abandoned and because jurisdiction to terminate parental rights was not then necessary in an emergency to protect S.A.G. from mistreatment or abuse. The juvenile court erred by failing to analyze its non-emergency jurisdiction because Colorado was not the home state and by failing to make factual findings about Arkansas's status. Those errors must be corrected, but the juvenile court must contact an Arkansas court only under the circumstances discussed in Part II.E. If the juvenile court does acquire non-emergency jurisdiction after a full section

29

14-13-201(1) analysis, it may reinstate the termination judgment based on the existing record.

## III. Conclusion

¶59 For the foregoing reasons, we affirm in part and reverse in part the judgment of the court of appeals and remand the case to the juvenile court for further proceedings consistent with this opinion.