24CA1959 Peo in Interest of AG 06-05-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1959
Logan County District Court No. 21JV20
Honorable Stephanie M.G. Gagliano, Judge

The People of the State of Colorado,

Appellee,

In the Interest of A.G. and J.G., Children,

and Concerning E.G.,

Appellant.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE FOX
Harris and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 5, 2025

Koy Dingboom Oates, LLC, Jeffrey C. Koy, Lauren Dingboom, Jordan Oates, Englewood, Colorado, for Appellee

Josi McCauley, Counsel for Youth, Superior, Colorado, for A.G.

Josey McCauley, Guardian Ad Litem, for J.G.

Robin Tieman, Office of Respondent Parents' Counsel, Boulder, Colorado, for Appellant

¶ 1    E.G. (mother) appeals the judgment terminating her parent-child legal relationships with A.G. and J.G. (the children).  We affirm.

## I.    Background

¶ 2    In August 2021, the Logan County Department of Human Services received a report of domestic violence between mother and father.  Caseworkers went to the family home and spoke with the parents, the children subject to this appeal, and the children's older half-sibling.  When a caseworker returned to the home later, she found the older half-sibling home alone; he told the caseworker that he did not know where the rest of the family had gone or when they would be back.  The Department obtained temporary legal custody of the children, who were later located and removed from a home in Texas.

¶ 3    The Department then filed a petition in dependency or neglect.  Mother admitted to the allegations in the petition, and the juvenile court adjudicated the children dependent or neglected.  The court then adopted a treatment plan for mother, which required her to (1) meet the children's needs; (2) improve her relationship with the children; (3) cooperate with the Department and other

professionals; (4) address her mental health issues; (5) maintain a substance-free lifestyle; and (6) provide a home free of violence. Mother eventually separated from father, after which the court amended objective six of her treatment plan to focus on "domestic violence victimization."

¶ 4    In May 2024, the guardian ad litem moved to terminate mother's parental rights. The juvenile court held a termination hearing over three days in September 2024. After hearing the evidence, the court terminated the parent-child legal relationships between mother and the children.

## II.    Uniform Child-custody Jurisdiction and Enforcement Act

¶ 5    Mother first contends that the juvenile court erred by concluding that it had jurisdiction under the Uniform Child-custody Jurisdiction and Enforcement Act (UCCJEA). We disagree.

¶ 6    We review de novo whether the juvenile court had subject matter jurisdiction under the UCCJEA. *People in Interest of S.A.G.*, 2021 CO 38, ¶ 21. But we review the court's factual findings related to its determination that it has subject matter jurisdiction for clear error, and we will not disturb those findings unless they lack record support. *Id.*

¶ 7 The UCCJEA "establishes a comprehensive framework that a Colorado court must follow to determine whether it may exercise jurisdiction in a child-custody matter or whether it must defer to a court of another state." *People in Interest of M.M.V.*, 2020 COA 94, ¶ 17. The UCCJEA prescribes two ways for a Colorado court to issue an initial child-custody determination: temporary emergency jurisdiction, § 14-13-204, C.R.S. 2024, and non-emergency jurisdiction, § 14-13-201, C.R.S. 2024. In this appeal, mother asserts that the juvenile court could not exercise either temporary emergency or non-emergency jurisdiction.

¶ 8 At the initial shelter hearing, the juvenile court found that Colorado had non-emergency jurisdiction under the home-state provision in section 14-13-201(1)(a). Under that provision, Colorado is a child's home state when the child has lived in Colorado "for at least one hundred eighty-two consecutive days immediately before the commencement of a child-custody proceeding," including any "period of temporary absence." § 14-13-102(7)(a), C.R.S. 2024. The court determined that Colorado was the children's home state because the record established that the

3

children had "lived in the State of Colorado for over two years, although they are currently out of the state temporarily."

¶ 9 Despite the juvenile court's findings at the initial shelter hearing, it later held a second shelter hearing and made oral remarks that it would maintain temporary emergency jurisdiction because home-state jurisdiction could not be asserted at that time. Still, the court's written order said nothing about temporary emergency jurisdiction, stating only that "[o]ngoing jurisdiction" was "taken under advisement pending additional hearing and/or consultation" with other states. *See People in Interest of O.J.S.*, 844 P.2d 1230, 1233 (Colo. App. 1992) ("[T]he court has the authority to supplement and modify the opinions it expressed in its oral remarks until the date judgment formally enters."), *aff'd sub nom.*, *D.A.S. v. People*, 863 P.2d 291 (Colo. 1993).

¶ 10 After a series of conferences with judicial officers in other jurisdictions, the juvenile court ultimately found "that Colorado ha[d] exclusive[,] continuing jurisdiction" because Colorado was the children's home state. *See R.W. v. People in Interest of E.W.*, 2022 CO 51, ¶ 24 (holding that, once a court has obtained initial

jurisdiction, it maintains jurisdiction under the UCCJEA, even if all parties leave the state).

¶ 11    In a prior appeal, the children's father raised the same or similar UCCJEA arguments to those mother raises here. *See People in Interest of A.G.*, slip op. at ¶ 5 (Colo. App. No. 24CA0868, Dec. 19, 2024) (not published pursuant to C.A.R. 35(e)) (*A.G. I*). A division of this court determined that the juvenile court properly asserted home-state jurisdiction — not temporary emergency jurisdiction — at the first shelter hearing and then maintained that jurisdiction throughout the proceeding. *See id.* at ¶¶ 13, 17. It also concluded that any other erroneous jurisdictional findings made between the juvenile court's first assertion of home-state jurisdiction and its final jurisdictional orders were harmless because "nothing about those subsequent findings undermines the propriety of the court's initial finding of home-state jurisdiction." *Id.* at ¶ 17.

¶ 12    Because we are persuaded by the division's analysis in *A.G. I*, we reject mother's contentions for the same reasons articulated in that opinion. *See Fire Ins. Exch. v. Sullivan*, 224 P.3d 348, 352 (Colo. App. 2009) (although one division of the court of appeals is

not bound to follow the decision of another, we generally give considerable deference to the decisions of other divisions).

### III.    Fitness Within a Reasonable Time

¶ 13    Mother next asserts that the juvenile court erred by finding that she was unfit and unlikely to become fit in a reasonable time. We disagree.

¶ 14    To terminate a parent-child legal relationship under section 19-3-604(1)(c), C.R.S. 2024, the juvenile court must find, among other things, that (1) the parent is unfit and (2) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c)(II), (III).  Whether the court properly terminated parental rights is a mixed question of fact and law.  *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15.  We review the court's factual findings for clear error, but we review de novo its legal conclusions based on those facts.  *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

¶ 15    A parent is unfit if their conduct or condition renders them unable or unwilling to give their child reasonable parental care. *People in Interest of D.P.*, 160 P.3d 351, 353 (Colo. App. 2007). Reasonable parental care requires, at a minimum, that the parent

6

provide nurturing and safe parenting adequate to meet the child's physical, emotional, and mental needs and conditions. *People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006).

¶ 16    When deciding whether a parent's conduct or condition is likely to change within a reasonable time, the juvenile court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *People in Interest of D.L.C.*, 70 P.3d 584, 588-89 (Colo. App. 2003). What constitutes a reasonable time is fact-specific and varies from case to case. *People in Interest of D.Y.*, 176 P.3d 874, 876 (Colo. App. 2007).

¶ 17    The juvenile court found that mother was unfit to parent the children. In finding mother unfit, the court noted that she had not substantially complied with her treatment plan for most of the case. *See People in Interest of D.P.*, 181 P.3d 403, 408 (Colo. App. 2008) (because a parent's noncompliance with a treatment plan generally "demonstrates a lack of commitment to meeting the child's needs," it can be considered in determining parental fitness). It also noted that mother could not provide reasonable parental care for these "high needs" children because she was not honest about domestic

violence in the home, could not place the children's needs above her own, and did not display adequate parental protective capacity. *See People in Interest of K.T.*, 129 P.3d 1080, 1081 (Colo. App. 2005) (in considering a parent's fitness, the court must consider the specific physical, emotional, and mental needs of the children).

¶ 18    The juvenile court also found that mother's conduct or condition was unlikely to change in a reasonable time, given that the case had been open for three years, and mother had "failed to maintain [the] progress" she achieved after separating from father. *See People in Interest of V.W.*, 958 P.2d 1132, 1134-35 (Colo. App. 1998) (noting that even "increased compliance" over the course of a case may not justify more time).

¶ 19    The record supports the juvenile court's findings. Mother remained in a relationship with father until September 2023, and during that time, she denied that domestic violence occurred in the home. The caseworker testified that mother did not substantially comply with any part of her treatment plan during this period. And mother conceded that she could not provide the children with a safe and stable home while she remained in a relationship with father.

¶ 20    When mother separated from father, however, she began to engage in the case.  Among other things, mother returned to Colorado, began consistent in-person family time with the children, engaged in individual therapy, and participated in domestic violence treatment.

¶ 21    However, the caseworker testified that mother's progress did not last long.  In December 2023, mother left Colorado, moving several hundred miles away from the children to live with a friend in Kansas.  Mother said that she previously had a romantic relationship with this friend, but she claimed that their relationship was no longer romantic.  Still, based on the evidence before the juvenile court, including mother's own testimony about her living situation in Kansas, the court found that mother had "once again put herself in a living situation with someone who controls the house she lives in."  In other words, the record shows that, despite mother's progress from September to December 2023, she had not sufficiently addressed the main issue that brought the family to the Department's attention.

¶ 22    The evidence also shows that mother could not appropriately manage the children's needs or provide for their safety.  The

caseworker reported that mother had only recently begun community visits, and she did not believe that mother could care for the children without the Department's support. Mother also completed two parent-child interactional (PCI) evaluations during the case, one before she separated from father and one after. The evaluator testified that there were no meaningful changes in mother's parenting abilities between the first and second PCIs and that she had not improved her ability to redirect the children or give them structure. He also opined that, because mother continued to minimize her own trauma, she could not provide for the children's emotional and mental health needs. The evaluator concluded that mother could not meet the children's needs "outside of a supervised limited time period" and that it require an "impossible leap" for the children to return home to mother.

¶ 23 Mother submits that she was a fit parent or could become fit in a reasonable time because she had left father and substantially complied with her treatment plan, including achieving stable housing, maintaining sobriety, attending domestic violence victim classes, and cooperating with the Department. We are not persuaded for two reasons. First, the record supports the juvenile

court's findings that mother did not substantially comply with her treatment plan, and we cannot reweigh the evidence or substitute our judgment for the juvenile court. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 29. Second, even if mother substantially complied with her treatment plan, the record still shows that the treatment plan did not successfully rehabilitate her. *See People in Interest of K.B.*, 2016 COA 21, ¶ 26; *see also D.P.*, 160 P.3d at 354 (affirming a finding of unfitness despite the father's "maximum effort" and completion of his treatment plan where he still could not consistently meet the child's needs).

## IV. Reasonable Efforts

¶ 24 Mother last argues that the juvenile court erred by concluding that the Department made reasonable efforts to rehabilitate her and reunify her with the children. We disagree.

¶ 25 Before a juvenile court may find a parent unfit under section 19-3-604(1)(c), the county department of human services must make reasonable efforts to rehabilitate the parent and reunite the family. §§ 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2024. Whether a department satisfied its obligation to make reasonable efforts is a mixed question of fact and law. *People in Interest of*

*A.S.L.*, 2022 COA 146, ¶ 8. We review the court's factual findings for clear error and review de novo its legal determination, based on those findings, as to whether the department satisfied its reasonable efforts obligation. *Id.*

¶ 26 The reasonable efforts standard is satisfied by the provision of services in accordance with section 19-3-208. § 19-1-103(114). Such services may include, as necessary and appropriate, screenings, assessments, and individual case plans; home-based family and crisis counseling; information and referral services; family time; and placement services. § 19-3-208(2)(b). The services must be "appropriate to support the parent's treatment plan," *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011), but the parent is responsible for using those services to obtain the assistance needed to comply with the plan, *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011).

¶ 27 The juvenile court's termination order recognized that, in March 2022, it found that the Department had not made reasonable efforts, based, in large part, on the Department "failing to address the barrier of [mother] residing in Texas while [the] children [were] placed in Colorado." Yet, the court found that, by

12

November 2022, the Department had corrected those issues and made reasonable efforts to rehabilitate mother and reunify the family thereafter.

¶ 28     The record supports the juvenile court's finding that the Department made reasonable efforts from November 2022 forward. For example, the caseworker testified that, after mother returned to Colorado, the Department provided housing and transportation, and paid for her groceries and laundry services. The Department also referred mother to individual therapy and domestic violence services in Colorado and provided in-person supervised visitation. When mother moved to Kansas, the Department continued to provide mother with individual therapy and domestic violence services, as well as arranging and supervising in-person visits.

¶ 29     Mother does not assert that, when considering the totality of the circumstances, the Department failed to provide her with reasonable efforts. *See People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶¶ 33, 35 (a juvenile court should consider the totality of the circumstances and account for all services and resources provided to a parent, measuring them holistically rather than in isolation with respect to specific treatment plan objectives). Instead, she

identifies two discrete areas in which she believes that the Department "should have and could have done more." We are not persuaded.

¶ 30 First, mother asserts that the Department did not make reasonable efforts because "[t]he children had never been to Kansas to spend time with" her, even though Kansas authorities had approved her home as a potential placement for the children. But the record shows that mother's friend did not have any relationship with the children and did not participate in any of mother's visits (even though the Department had offered him this opportunity), and the children did not do well with unfamiliar individuals. And the caseworker said that, considering the children's special needs, the Department needed to observe the children's reactions to the people living in mother's home before allowing visits to occur there. Finally, as noted above, mother only had two community visits with the children, and the caseworker did not believe that mother could have managed those visits without the Department's staff.

¶ 31 Second, mother asserts that the Department failed to make reasonable efforts because only one of the children was in family therapy and the therapist did not have the "training recommended."

The record belies mother's assertion. To begin, the PCI evaluator testified that he recommended that family therapy begin only with A.G., not J.G., until mother made sufficient progress. The record shows that mother had yet to address her relationship with A.G., so family therapy had not moved forward. As for mother's assertion that the therapist did not have adequate training, the record shows that the PCI evaluator recommended someone with training in Applied Behavior Analysis (ABA), parent-child interactional therapy (PCIT), or something "similar." And he clarified that ABA and PCIT training were not necessary if the Department provided some "therapeutic intervention." Because the Department did so, we reject mother's argument.

## V.   Disposition

¶ 32   The judgment is affirmed.

JUDGE HARRIS and JUDGE SCHUTZ concur.