The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
June 11, 2020

2020COA94

**No. 19CA0759, *Petition of MMV* — Family Law — Children's Code — Relinquishment and Adoption — Stepparent Adoption — Uniform Child-custody Jurisdiction and Enforcement Act**

A division of the court of appeals considers whether the Uniform Child-custody Jurisdiction and Enforcement Act (UCCJEA) governs a proceeding for stepparent adoption. Although the UCCJEA exempts adoption proceedings from its purview, it expressly provides that it is applicable to proceedings to terminate parental rights. Reconciling these two provisions, the division concludes, for the first time, that when, as here, the stepparent adoption case also requires the court to consider the termination of parental rights, the UCCJEA governs that portion of the case.

The division further concludes that the magistrate did not properly acquire subject matter jurisdiction under the UCCJEA to

hear the proceeding to terminate father's parental rights. As a result, the division vacates the judgment.

COLORADO COURT OF APPEALS                                    **2020COA94**

Court of Appeals No. 19CA0759
Pueblo County District Court No. 18JA12
Honorable Gregory J. Styduhar, Judge

In re the Petition of M.M.V.,

Appellee,

for the Adoption of D.D.R., a Child,

and Concerning B.P.R.,

Appellant.

JUDGMENT VACATED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE PAWAR
Furman and Welling, JJ., concur

Announced June 11, 2020

Melinda B. Orendorff, Pueblo, Colorado, for Appellee

Beltz & West, P.C., Daniel A. West, Colorado Springs, Colorado, for Appellant

¶ 1    In this stepparent adoption proceeding, B.P.R. (father) appeals from the juvenile court judgment terminating his parental rights and decreeing the adoption of his child, D.D.R., by M.M.V. (stepfather).  We must decide an issue that has not yet been addressed in Colorado — does the Uniform Child-custody Jurisdiction and Enforcement Act (UCCJEA), sections 14-13-101 to -403, C.R.S. 2019, govern the termination of parental rights that is initiated in a stepparent adoption case?  We conclude that the answer is yes.

¶ 2    We further conclude that the record does not establish that the magistrate properly acquired subject matter jurisdiction under the UCCJEA before terminating father's parental rights.  As a result, we vacate the judgment and remand the case for further proceedings.

## I.  The Juvenile Court Proceeding

¶ 3    The child was born to K.E.V. (mother) and father in 2007.  About six years later, a court in Arizona issued an order that dissolved the parents' marriage and allocated decision-making authority and parenting time for the child.  As part of the same case, the Arizona court later issued orders (1) placing restrictions

1

on father's parenting time; (2) awarding visitation to the paternal grandparents; and (3) authorizing mother to move with the child to Colorado.

¶ 4     Meanwhile, mother married stepfather. And, in February 2018, stepfather filed two petitions, one to adopt the child and one to terminate the child's legal relationship with father. Father moved to dismiss the petitions under the UCCJEA and the Parental Kidnaping Prevention Act (PKPA), 42 U.S.C. § 1738A (2018), arguing that because the Arizona court that had made the prior child-custody determinations had not declined jurisdiction, the Colorado court lacked jurisdiction to grant the relief requested.

¶ 5     Soon thereafter, mother asked the Arizona court to decline to exercise its continuing jurisdiction over decision-making authority and parenting time for the child. Although mother's motion informed the Arizona court that a Colorado court had a pending proceeding to sever father's rights and allow stepfather to adopt the child, it does not appear that she filed a copy of the petitions from this case. After reviewing pleadings from mother and father, the Arizona court determined that the child no longer had a significant connection with the state and that substantial evidence regarding

the child's care was no longer available in the state. As a result, it granted mother's request and declined its continuing jurisdiction. And, based on that order, the magistrate in stepfather's case determined that the Colorado court had jurisdiction to hear the petitions for termination and stepparent adoption.

¶ 6 However, in early September 2018, the Arizona court partially reconsidered its determination. By the agreement of the parties to that case — father, mother, and the paternal grandparents — the Arizona court determined that it would retain jurisdiction over the grandparents' visitation rights and severed that issue into a separate case.

¶ 7 Not long after, the magistrate held a hearing on stepfather's petitions to terminate father's rights and adopt the child. At the start of the hearing, father raised the issue of the reconsideration order and objected to the magistrate exercising jurisdiction because it meant two states would be determining child-custody issues. The magistrate determined that the Colorado court had jurisdiction, but also said that it was a significant issue that the parties needed to address as part of their proposed orders.

¶ 8       Following the two-day hearing, the magistrate issued a thorough order addressing the Colorado court's jurisdiction to hear the proceeding under the UCCJEA and the PKPA.  The magistrate reasoned that termination and stepparent adoption were a single proceeding and the UCCJEA did not apply to adoption proceedings.  The magistrate further observed that even if the UCCJEA was applicable, the Arizona court's reconsideration order was entered without jurisdiction because the magistrate had already begun exercising the Colorado court's jurisdiction by that time.  Thereafter, the magistrate terminated father's parental rights and granted the decree of adoption.

## II.  Jurisdiction Over Proceeding

¶ 9       Father contends that the magistrate lacked subject matter jurisdiction under the UCCJEA and the PKPA to terminate his parental rights because the Arizona court had previously entered a child-custody determination and had, at the time of the termination proceeding, retained jurisdiction over grandparent visitation.  To resolve this issue, we must first decide a preliminary question that the magistrate also addressed — whether the UCCJEA governs a proceeding to terminate parental rights that arises in the context of

4

a stepparent adoption.  Contrary to the magistrate's determination, we conclude that the UCCJEA is applicable under those circumstances and that the record does not demonstrate that the magistrate had properly acquired jurisdiction under the UCCJEA to consider the termination of parental rights.

### A.  Standard of Review and Interpretation Principles

¶ 10     We review questions of statutory interpretation de novo. *People in Interest of L.M.*, 2018 CO 34, ¶ 13.  In construing a statute, we look at the entire statutory scheme "in order to give consistent, harmonious, and sensible effect to all of its parts, and we apply words and phrases in accordance with their plain and ordinary meanings." *Id.* (quoting *UMB Bank, N.A. v. Landmark Towers Ass'n*, 2017 CO 107, ¶ 22).

¶ 11     And, when construing statutes related to the same subject matter, we aim to avoid a statutory interpretation that would render certain words or provisions superfluous or ineffective.  *Id.*  We also avoid a statutory construction that would lead to an absurd result. *Id.*  Instead, we aim to adopt an interpretation that achieves consistency across a comprehensive statutory scheme.  *Id.*

### B.  Statutory Frameworks

### 1. Stepparent Adoption and Termination of Parental Rights

¶ 12    Under the Colorado Children's Code, a child may be available for stepparent adoption when the parent has abandoned the child or failed without cause to provide reasonable support for a period of one year or more. § 19-5-203(1)(d)(II), C.R.S. 2019; *D.P.H. v. J.L.B.*, 260 P.3d 320, 324 (Colo. 2011). Alternatively, a parent having only residual parental responsibilities may consent to the child's adoption by the spouse of the parent who has primary custody or parental responsibilities. § 19-5-203(1)(e).

¶ 13    Still, there are two distinct components that arise during a stepparent adoption case. In addition to issuing a final decree of adoption, the juvenile court must also issue an order terminating the noncustodial parent's rights. § 19-5-210(6), C.R.S. 2019; *see also D.P.H.*, 260 P.3d at 323 (recognizing that a stepparent adoption necessarily includes the termination of the parental rights of the noncustodial parent). Although both the decree and termination judgment are issued in the same case, they are separate orders. *See In re E.R.S.*, 2019 COA 40, ¶ 21 (concluding that the juvenile court's order terminating mother's parental rights in a stepparent

6

adoption proceeding was final for appellate purposes even though the court had not issued the adoption decree).

¶ 14    In addition to being a distinct component of the stepparent adoption process, termination of parental rights is particularly significant because it permanently severs a constitutionally protected fundamental liberty interest.  The Due Process Clause of the Fourteenth Amendment protects the fundamental right of a parent to make decisions concerning the care, custody, and control of his or her child.  *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000); *see also In Interest of Baby A*, 2015 CO 72, ¶ 20.  It is perhaps the oldest of the fundamental liberty interests recognized by the Supreme Court.  *Troxel*, 530 U.S. at 65.  And it is an interest far more precious than any property right.  *Santosky v. Kramer*, 455 U.S. 745, 758-59 (1982).

¶ 15    Termination of parental rights is defined as the permanent elimination of all parental rights and duties, including residual rights and responsibilities.  § 19-1-103(107), C.R.S. 2019.  It is complete, final, and irrevocable.  *In Interest of K.D.*, 471 S.W.3d 147, 167 (Tex. App. 2015).  As a result, termination permanently

severs the parent's fundamental liberty interest in parenting his or her child.

## 2. The UCCJEA

¶ 16 The UCCJEA was promulgated by the Uniform Law Commission for the key purpose of creating consistency in interstate child-custody jurisdiction and enforcement proceedings. *Angel B. v. Vanessa J.*, 316 P.3d 1257, 1259-60 (Ariz. Ct. App. 2014). It has now been adopted in forty-nine states as well as the District of Columbia. Linda Elrod, Unif. Law Comm'n Joint Editorial Bd. of Unif. Family Law, *Commentary on Adoption Jurisdiction Under the UCCJEA* 7, 9 (2019), https://perma.cc/6TYE-4SJZ.

¶ 17 The primary aim of the UCCJEA is to prevent competing and conflicting custody orders by courts in different jurisdictions that would put all parties at risk of uncertainty and unilateral removals of children from or to various jurisdictions. *Angel B.*, 316 P.3d at 1260. Put another way, the UCCJEA is designed to avoid jurisdictional competition over child-custody matters in an increasingly mobile society. *Brandt v. Brandt*, 2012 CO 3, ¶ 19. To effectuate this purpose, it establishes a comprehensive framework

8

that a Colorado court must follow to determine whether it may exercise jurisdiction in a child-custody matter or whether it must defer to a court of another state. *People in Interest of A.B-A.*, 2019 COA 125, ¶ 9. The UCCJEA covers a wide variety of child-custody matters, defined as child-custody determinations and child-custody proceedings. *See* § 14-13-102(3)-(4), C.R.S. 2019.

### C. UCCJEA Applicability to Termination and Adoption

¶ 18    The UCCJEA contains two provisions addressing its applicability. On the one hand, section 14-13-102(4) defines a child-custody proceeding as "a proceeding in which legal custody or physical custody with respect to a child or the allocation of parental responsibilities with respect to a child or visitation, parenting time, or grandparent or great-grandparent visitation with respect to a child is an issue." It expressly provides that a proceeding for termination of parental rights is one type of child-custody proceeding. § 14-13-102(4).

¶ 19    On the other hand, section 14-13-103, C.R.S. 2019, exempts two types of proceedings from the UCCJEA's purview. As pertinent here, it provides that "[t]his article [the UCCJEA] does not govern an adoption proceeding." § 14-13-103. This section was premised on

the assumption that states would adopt the Uniform Adoption Act. *See* § 14-13-103 cmt. Colorado has not done so.

¶ 20 Relying on section 14-13-103, our supreme court determined that the UCCJEA was inapplicable in the context of a failed interstate adoption proceeding. *People in Interest of A.J.C.*, 88 P.3d 599, 609, 611 (Colo. 2004). Similarly, a division of this court concluded that the UCCJEA did not apply to a custodial adoption proceeding. *See In re Adoption of K.L.L.*, 160 P.3d 383, 385 (Colo. App. 2007).

¶ 21 Yet, neither opinion specifically addresses whether the UCCJEA governs the termination of parental rights when it is initiated in an adoption case. Nor do they reconcile the provisions of sections 14-13-102(4) and 14-13-103. To resolve whether the UCCJEA applies to a termination proceeding brought in a stepparent adoption case, we must examine the interplay between these two provisions.

¶ 22 A plain and harmonious reading of these two provisions shows that while the UCCJEA does not govern a proceeding that solely involves the adoption of a child, it does apply to the portion of a stepparent adoption case that concerns the termination of parental

10

rights. Thus, for example, the UCCJEA would have no applicability to a stepparent adoption case if the noncustodial parent were deceased or had previously had his or her parental rights terminated in a separate case. In contrast, when, as here, the stepparent adoption case also requires the court to consider the termination of parental rights, the UCCJEA governs that portion of the case.

¶ 23    To hold otherwise would create a direct conflict between the UCCJEA's provisions. It would subject a termination of parental rights proceeding to the UCCJEA under section 14-13-102(4) but, at the same time, exempt it from the UCCJEA under section 14-13-103 because it arose in an adoption proceeding. And it would not give effect to section 14-13-102(4)'s inclusion of termination of parental rights — without exception — as one type of child-custody proceeding.

¶ 24    The South Carolina Court of Appeals took a similar approach and concluded that the UCCJEA was applicable to an action that terminated parental rights and granted a petition for stepparent adoption. *Anthony H. v. Matthew G.*, 725 S.E.2d 132, 134 (S.C. Ct. App. 2012). It observed that in order for the adoption action to

11

proceed, the legal parents had to consent to the adoption, relinquish their parental rights, or have their parental rights terminated. *Id.* Accordingly, it reasoned that the court had to first consider the termination of parental rights and the UCCJEA applied to an action to do so. *Id.*

¶ 25 The Louisiana Court of Appeal also concluded that the UCCJEA applied to the termination of parental rights in the context of an interfamily adoption. It reasoned that if a party could simply move to another state and apply to adopt a child, which requires terminating the parental rights that are at issue in the other state, it would undercut the validity of any custody judgment issued by a court of competent jurisdiction. *In re D.C.M.*, 170 So. 3d 165, 171 (La. Ct. App. 2013). It further expounded that termination was the ultimate custody determination and that the adoption exemption contained in the UCCJEA did not allow one state to permit an interfamily adoption while another state had continuing, exclusive jurisdiction over the custody of the children. *Id.* at 172-73.

¶ 26 We recognize that two jurisdictions have reached the opposite result. One district of the California Courts of Appeal determined that the UCCJEA does not apply to stepparent adoptions. *Adoption*

*of K.C.*, 203 Cal. Rptr. 3d 110, 112 (Ct. App. 2016). And the Utah Court of Appeals rejected a parent's argument that the court lacked jurisdiction under the UCCJEA to terminate his parental rights as part of an adoption proceeding. *In re Adoption of B.H.*, 447 P.3d 110, 112, 114 (Utah Ct. App. 2019), *cert. granted*, 455 P.3d 1062 (Utah 2019) (unpublished table decision). Both of these opinions, however, rely solely on the UCCJEA provision exempting adoptions without reconciling it with the provision that defines a child-custody proceeding as including a proceeding to terminate parental rights.

¶ 27    We agree with the reasoning of those states that have applied the UCCJEA in this context. Therefore, we conclude that while the UCCJEA exempts adoptions from its purview, it nonetheless governs a proceeding to terminate parental rights that is initiated in a stepparent adoption case.

¶ 28    Having reached this conclusion, we must next determine whether the magistrate properly acquired jurisdiction under the UCCJEA to hear the proceeding to terminate father's parental rights.

D.  Establishing Jurisdiction Under the UCCJEA

13

### 1. The Legal Framework

#### a. Jurisdiction between States

¶ 29 Under the UCCJEA, the court that makes an initial custody determination generally retains exclusive, continuing jurisdiction. § 14-13-206, C.R.S. 2019; *People in Interest of M.S.*, 2017 COA 60, ¶ 15. Accordingly, absent temporary emergency jurisdiction under section 14-13-204, C.R.S. 2019, a Colorado court may only modify a custody order issued by an out-of-state court under limited circumstances. *M.S.*, ¶ 15.

¶ 30 First, the Colorado court must have jurisdiction to make an initial custody determination under section 14-13-201(1)(a) or (b), C.R.S. 2019. § 14-13-203(1), C.R.S. 2019; *Brandt*, ¶ 33. Second, the court in the issuing state must have lost or declined to exercise jurisdiction. *Brandt*, ¶ 33. This can occur when the court in the issuing state determines that (1) the child and parents no longer have a significant connection to the issuing state and substantial evidence regarding the child is not available in the issuing state, or (2) the Colorado court is a more convenient forum. §§ 14-13-202, -203(1)(a), C.R.S. 2019; *M.S.*, ¶ 17. It may also occur when either the issuing court or a Colorado court determines that the child, the

parents, and anyone acting as a parent do not presently reside in the issuing state. § 14-13-203(1)(b); *A.B-A.*, ¶ 10.

¶ 31   Significantly, before a Colorado court may assume jurisdiction to modify an out-of-state custody order, it must communicate with the issuing court pursuant to sections 14-13-110 to -112, C.R.S. 2019. *Brandt,* ¶ 35.

¶ 32   Likewise, a court of this state may not exercise its jurisdiction if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state unless the proceeding has been terminated or is stayed by the other state court because a court of this state is a more convenient forum. § 14-13-206(1).  If a Colorado court determines that a child-custody proceeding has been commenced in a court in another state, it must communicate with the other state court. § 14-13-206(2); *People in Interest of C.L.T.*, 2017 COA 119, ¶ 23.

### b.  Communication between States

¶ 33   The UCCJEA is premised on the assumption that sister state courts will communicate with one another.  *Saavedra v. Schmidt*, 96 S.W.3d 533, 547-48 (Tex. App. 2002).  As our supreme court has

explained, communication is "exceedingly beneficial" in this type of proceeding. *Brandt,* ¶ 34. Inter-court communication facilitates an understanding between sister states regarding whether the issuing state has lost jurisdiction or declined to exercise jurisdiction in favor of a more convenient forum. *Id.* It also alerts the new state to any pending actions in the issuing state and helps to develop a factual record in the matter of jurisdiction. *Id.*

¶ 34 The communication can occur in many different ways, including by telephone conference, online communication, or other electronic means. § 14-13-110 cmt. And this communication must be made directly by the court — which is defined as an entity authorized under the law of a state to establish, enforce, or modify a child-custody determination. § 14-13-102(6); *see also People in Interest of D.P.,* 181 P.3d 403, 407 (Colo. App. 2008). This includes a judge or a magistrate. *D.P.,* 181 P.3d at 407.

¶ 35 Section 14-13-110(4) requires the court to make a record of all communications between courts concerning proceedings that arise under the UCCJEA except for those involving schedules, calendars, court records, and similar matters. *D.P.,* 181 P.3d at 406. A record is defined as information that is inscribed on a tangible medium or

that is stored in an electronic or other medium and is retrievable in perceivable form. § 14-13-110(5).

¶ 36     The court may allow the parties to participate in the communication with the other court. § 14-13-110(2). If the parties are not able to participate in the communication, then the court must give them the opportunity to present facts and legal arguments before it makes a decision regarding its jurisdiction. *Id.* Arizona's version of the UCCJEA contains the same provisions. *See* Ariz. Rev. Stat. Ann. § 25-1010 (2019).

¶ 37     This process is particularly significant because it informs the jurisdictional decision. Indeed, a Colorado court must decide whether it has jurisdiction to modify an existing out-of-state custody order based on the information provided by the parties and its discussion with the court in the other state. *See C.L.T.*, ¶ 24.

## 2. The Record

¶ 38     When stepfather initiated the proceeding to adopt the child and terminate father's parental rights, Arizona had a pending child-custody proceeding. And it had made multiple child-custody determinations regarding father's parenting time and visitation for the paternal grandparents. Father and the paternal grandparents

continued to reside in Arizona. Consequently, Arizona had exclusive, continuing jurisdiction over the child that it had to decline — consistent with the requirements of the UCCJEA — before the Colorado magistrate could consider the termination of father's parental rights.

¶ 39    Yet, the record contains no indication that the magistrate communicated with the issuing court in Arizona before assuming jurisdiction to terminate father's parental rights. Instead, the magistrate relied on a written order from the Arizona court relinquishing its jurisdiction based on pleadings submitted by mother and father. And the Colorado magistrate, without conferring with the Arizona court, determined that the Arizona court lacked jurisdiction to reconsider that order.

¶ 40    We are not persuaded that this was an adequate substitute for inter-court communication. Indeed, the record in this case highlights some of the pitfalls of doing so. For example, in its initial order declining jurisdiction, the Arizona court determined that there was no longer substantial evidence available in Arizona concerning the child's care, protection, training, and personal relationships. In reaching this determination, the court reasoned that the child had

been in Colorado since 2016 and that, if it were to reinstate father's parenting time, it would necessitate reunification therapy in Colorado.

¶ 41    This reasoning appears to be at odds with the nature of the stepparent adoption proceeding that was then pending before the Colorado court. The issue before the Colorado court was not whether father should have parenting time, but rather, whether father's parental rights should be terminated so that stepfather could step into his shoes as the child's legal parent. And, even if the magistrate had decided that the grounds for stepparent adoption were not met, he would have simply denied the petition without considering any parenting time to father.

¶ 42    The reconsideration issue further highlights some of the same pitfalls. Recall that the Arizona court also subsequently determined that it would relinquish its jurisdiction over the custodial issues between mother and father, while retaining its jurisdiction over grandparent visitation. This was a seemingly conflicting determination that could have been avoided by inter-court communication. Grandparent visitation is expressly identified as

both a child-custody determination and a child-custody proceeding under the UCCJEA. *See* § 14-13-102(3)-(4).

¶ 43 Additionally, inter-court communication would have allowed for discussion of whether, and if so, on what basis, the Arizona court had authority to partially reconsider its earlier declination of jurisdiction.

¶ 44 For these reasons, the magistrate lacked jurisdiction to terminate father's parental rights and we must vacate the judgment.

## III. Remaining Arguments

¶ 45 Because we have already concluded that the judgment must be vacated so that the magistrate can confer with the Arizona court regarding jurisdiction, we need not review whether the magistrate properly concluded that the Arizona court's order retaining jurisdiction was not entitled to enforcement under the PKPA. For the same reason, we do not consider father's contentions that the magistrate erred by (1) concluding that he had abandoned the child and (2) failing to advise him of his right to have the matter heard by a judge.

## IV. Conclusion

¶ 46    The judgment is vacated.  The matter is remanded to the juvenile court for the magistrate to determine whether the Colorado court has jurisdiction to issue a termination judgment that modifies the Arizona custody order.  In doing so, the magistrate must communicate with the issuing court in Arizona pursuant to sections 14-13-110 to -112.  *See Brandt*, ¶ 35.

JUDGE FURMAN and JUDGE WELLING concur.