21CA0148 Peo in Interest of SL 10-07-2021 COLORADO COURT OF APPEALS Court of Appeals No. 21CA0148 Logan County District Court No. 19JV39 Honorable Carl S. McGuire, III, Judge The People of the State of Colorado, Appellee, In the Interest of S.L., a Child, and Concerning Z.L. and T.B., a/k/a T.M., Appellants. JUDGMENT VACATED AND CASE REMANDED WITH DIRECTIONS Division VI Opinion by JUDGE FOX Welling and Johnson, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced October 7, 2021 Alan Samber, County Attorney, Kimberlee Keleher, Assistant County Attorney, Sterling, Colorado, for Appellee Jayme Muehlenkamp, Guardian Ad Litem The Law Office of Michael Kovaka, Michael Kovaka, Littleton, Colorado, for Appellant Z.L. Amanda L. Schmitz, Office of Respondent Parents’ Counsel, Michael P. Boyce, Office of Respondent Parents’ Counsel, Denver, Colorado, for Appellant T.B.
1 ¶ 1 T.B. (mother) and Z.L. (father) appeal the judgment terminating their parent-child legal relationship with S.L. (the child). We vacate the termination judgment because the record does not demonstrate compliance with the Uniform Child-custody Jurisdiction and Enforcement Act (UCCJEA), and we remand for the court to make additional findings as explained here. I. Jurisdiction Under the UCCJEA A. Standard of Review ¶ 2 All parties acknowledge that lack of subject matter jurisdiction can be raised for the first time on appeal. People in Interest of M.S., 2017 COA 60, ¶ 13. ¶ 3 We review de novo whether the juvenile court had subject matter jurisdiction under the UCCJEA, which applies in dependency and neglect proceedings. Id. at ¶¶ 11-12, 14. B. General Law ¶ 4 The UCCJEA seeks to “prevent competing and conflicting custody orders by courts in different jurisdictions” and to “avoid jurisdictional competition over child-custody matters in an increasingly mobile society.” In re M.M.V., 2020 COA 94, ¶ 17. “To effectuate this purpose, [the UCCJEA] establishes a comprehensive 
2 framework that a Colorado court must follow to determine whether it may exercise jurisdiction in a child-custody matter or whether it must defer to a court of another state.” Id. The UCCJEA covers a variety of child-custody determinations and child-custody proceedings. See § 14-13-102(3)-(4), C.R.S. 2020. C. Temporary Emergency Jurisdiction ¶ 5 Mother argues that the juvenile court did not have temporary emergency jurisdiction because an emergency no longer existed at the time of the shelter hearing. Specifically, she asserts that family members were willing to help her care for the child in Utah. We discern no basis for reversal. ¶ 6 Section 14-13-204(1), C.R.S. 2020, authorizes a Colorado court to exercise temporary emergency jurisdiction if (1) the child is present in the state; and (2) the exercise of jurisdiction is “necessary in an emergency to protect the child” from “mistreatment or abuse.” Id.; see also People in Interest of C.L.T., 2017 COA 119, ¶ 17. ¶ 7 We conclude that the juvenile court had temporary emergency jurisdiction at the time of the shelter hearing. The child was present in Colorado. And, based on the concerns presented at the 
3 shelter hearing and in the petition, the court could have reasonably concluded that the child was being subjected to mistreatment or abuse. Namely, the Department alleged concerns about substance abuse, mental health, and homelessness. The Department presented evidence that mother and the child were traveling from Nebraska to Utah and had stopped in Colorado. While in Colorado, mother and the child had gone to the hospital because mother had concerns that the child had a broken rib and rash. The child was wearing clothes that were too small, mother appeared to be under the influence of drugs, and she indicated that she could not care for the child. Further, mother and the child had recently been involved with social services in Nebraska and mother had regained custody of the child approximately one month before traveling to Colorado. D. Initial Jurisdiction and Court Communication ¶ 8 Mother and father contend that the juvenile court violated their due process rights by failing to comply with the procedures in section 14-13-110, C.R.S. 2020. In particular, they argue that the Colorado court failed to disclose the record of the communication it had with the Nebraska court and allow the parents to present facts and legal arguments before it entered its jurisdictional order. 
4 Mother therefore asserts that the court lacked continuing jurisdiction to enter the termination judgment. Because the court did not follow the procedure in section 14-13-110 and the parents were not given an opportunity to present facts and legal arguments to the court after the communication but before it entered the jurisdictional order, we vacate the termination judgment. ¶ 9 Except as otherwise provided under section 14-13-204, a Colorado court has jurisdiction to make an initial child-custody determination if Colorado is the home state of the child on the date the proceeding begins or if the court of the child’s home state had declined to exercise jurisdiction. § 14-13-201(1)(a)-(b), C.R.S. 2020. The court that makes an initial child-custody determination generally retains exclusive, continuing jurisdiction. § 14-13-202, C.R.S. 2020; M.S., ¶ 15. ¶ 10 Section 14-13-110(1) outlines how a Colorado court communicates with a court in another state. The communication can occur in various ways, including by telephone conference, online communication, or other electronic means. § 14-13-110 cmt., C.R.S. 2020. But this communication must be made directly by the court — which is defined as an entity authorized under the 
5 law of a state to establish, enforce, or modify a child-custody determination. § 14-13-102(6), C.R.S. 2020; see also People in Interest of D.P., 181 P.3d 403, 407 (Colo. App. 2008). ¶ 11 Section 14-13-110(4) requires the court to make a record of all communications between courts concerning proceedings that arise under the UCCJEA except for those involving schedules, calendars, court records, and similar matters. D.P., 181 P.3d at 406. A record is defined as information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form. § 14-13-110(5), C.R.S. 2020. “The parties must be informed promptly of the communication and granted access to the record.” § 14-13-110(4) (emphasis added). ¶ 12 The court may allow the parties to participate in the communication with the other court. § 14-13-110(2). If the parties are unwilling or unable to participate in the communication, then the court must give them the opportunity to present facts and legal arguments before it makes a decision regarding its jurisdiction. Id. ¶ 13 “This process is particularly significant because it informs the jurisdictional decision.” M.M.V., ¶ 37. Indeed, a Colorado court must decide whether it had initial and continuing jurisdiction 
6 “based on the information provided by the parties and its discussion with the court in the other state.” Id. ¶ 14 Due process requires the state to provide fundamentally fair procedures in dependency and neglect proceedings. People in Interest of J.A.S., 160 P.3d 257, 262 (Colo. App. 2007). A parent must be given notice of the proceeding, an opportunity to be heard and to defend, and the advice of counsel. Id. ¶ 15 Early in the case, mother moved to dismiss, arguing that the Colorado court lacked subject matter jurisdiction because Colorado was not the child’s home state under the UCCJEA. The Department and the guardian ad litem (GAL) filed responses, indicating that Nebraska may be the child’s home state and suggesting that the Colorado court reach out to a Nebraska court. The Department also sent notice to the court and the parties, stating that it had contacted the Nebraska social services, the family had been previously involved in a case, and there was no open custody case. The GAL further argued that Utah may be the appropriate forum given that mother and the child were traveling to Utah with the intent to reside there and the parents currently resided there. The juvenile court denied mother’s motion to 
7 dismiss, finding that it had communicated with the Nebraska court by telephone and that Nebraska, the child’s home state, had declined to exercise jurisdiction over the child. ¶ 16 We conclude that the juvenile court did not comply with the requirements of section 14-13-110 before it entered the jurisdictional order. Other than the court’s statements in its jurisdictional order regarding its communication with the Nebraska court, there is no record of the communication. We are not persuaded that a court’s findings in its jurisdictional order are a record of the communication as contemplated by section 14-13-
110. Cf. D.P., 181 P.3d at 406-07 (a transcript of a hearing containing information the Colorado court had communicated to the Rhode Island court was a record for purposes of section 14-13-
110); People In Int. of S.A.G., 2021 CO 38, ¶ 56 (“[S]ection 14-13-
110 does require at least one of the two courts to make a record of the communication, successful or not, which could be as simple as ‘a memorandum . . . made by a court after the communication.”) (quoting § 14-13-110 cmt.). If there was a record of the communication, the parents were not granted access to it. More importantly, the parents were not promptly informed of the 
8 communication or given an opportunity to present facts and legal arguments before the court made it decision regarding its jurisdiction. S.A.G., ¶ 56 (“The Colorado court must also give the parties an ‘opportunity to present facts and legal arguments before a decision on jurisdiction is made’ or ‘allow the parties to participate in the communication.’”) (quoting § 14-13-110(2)). As a result, the parents were not able to present facts and legal arguments, as they do on appeal, that Nebraska or Utah was a more appropriate jurisdiction under the UCCJEA. ¶ 17 We recognize that two months before the termination hearing, the Department filed a motion to affirm that the Colorado court had continuing jurisdiction, the parents did not respond to the motion, and the juvenile court found that it had continuing jurisdiction. But, the court entered its order one day after the Department filed its motion without affording the parents time to respond to the Department’s motion before the court ruled on it. Thus, the parents were not given an opportunity to present facts and legal arguments before the court made a second decision about its jurisdiction. 
9 ¶ 18 Because the juvenile court did not comply with the requirements of section 14-13-110, the parents were not afforded their due process rights. And without compliance with section 14-
13-110 and a complete record of the jurisdictional issues, we are unable to determine whether the Colorado court had jurisdiction to terminate mother’s and father’s parental rights. ¶ 19 Accordingly, we vacate the termination judgment and remand to the juvenile court for further proceedings. II. Remand Instructions ¶ 20 While it is clear that the juvenile court took jurisdiction beyond the emergency, it is not clear on what basis the court accepted jurisdiction.
1 On remand, we direct the court to follow the procedure in section 14-13-110 in determining whether its jurisdiction under section 14-13-201, giving the parties an opportunity to present relevant facts and applicable legal arguments. If the court finds that it had initial jurisdiction, it shall specify which type of jurisdiction it is invoking. See S.A.G., ¶ 26 1 Indeed, in its order concerning jurisdiction, after concluding that Nebraska was the child’s home state and that the Nebraska court had declined to exercise jurisdiction, the court did not specify the specific basis that Colorado was asserting jurisdiction. 
10 (listing and describing the “four paths” to non-emergency jurisdiction under the UCCJEA). ¶ 21 If the court finds that it had initial jurisdiction, it must then determine whether it should decline its continuing jurisdiction under section 14-13-207 in favor of Utah, where the parents relocated as, pursuant to section 14-13-201(3), the child was not required to have been present in Utah. The court shall take additional evidence, including evidence of changed circumstances, and arguments about jurisdiction from the parties and shall make appropriate findings thereon. III. Mother’s and Father’s Other Contentions ¶ 22 Because we vacate the termination judgment, we need not address • mother’s contention that the juvenile court did not consider whether Colorado should have declined its jurisdiction pursuant to section 14-13-207, C.R.S. 2020; • her contention that the Department failed to make reasonable efforts to facilitate in-person visits and meaningful video visits; 
11 • father’s contention that the court did not make a second inquiry with regard to the Indian Child Welfare Act at the termination stage; and • mother’s and father’s contention that the court violated their due process rights and right to travel when it adopted an amended treatment plan requiring them to relocate from Utah to Colorado. III. Conclusion ¶ 23 We vacate the termination judgment. The matter is remanded to the juvenile court for it to follow the procedure in section 14-13-
110 and determine whether it has jurisdiction under sections 14-
13-201 and 14-13-207. The court shall take further evidence concerning jurisdiction as we explain above. ¶ 24 If the juvenile court concludes that it has continuing jurisdiction and it was not appropriate to decline jurisdiction to Utah, then it may reinstate the termination judgment. Either party may then appeal the jurisdictional or merits rulings. ¶ 25 Pending further order of the juvenile court, the out-of-home placement order remains in effect and the child shall stay in his current placement. 
12 JUDGE WELLING and JUDGE JOHNSON concur