24CA0150 Peo in Interest of J-TM 09-12-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0150
Weld County District Court No. 22JV29
Honorable W. Troy Hause, Judge

The People of the State of Colorado,

Appellee,

In the Interest of J-T.M., a Child,

and Concerning E.S.P.,

Appellant.

JUDGMENT AFFIRMED

Division A
Opinion by JUSTICE MARTINEZ*
Román, C.J., and Richman*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 12, 2024

Bruce T. Barker, County Attorney, David S. Anderson, Assistant County
Attorney, Greeley, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for
Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     E.P. (mother) appeals the juvenile court's reinstatement of the judgment adjudicating J-T.M. (the child) dependent and neglected following a remand from another division of this court.  The other division concluded that the record showed the child had no home state and remanded for the juvenile court to conduct a full jurisdictional analysis.  On remand, the juvenile court determined that it had last resort jurisdiction.  We affirm the judgment.

## I.     Background

¶ 2     The Weld County Department of Human Services filed a petition in dependency and neglect regarding the then two-year-old child on February 17, 2022.  The petition alleged that the Department received a referral that the family was homeless, living in motel, and had no food.

¶ 3     After hearing evidence that the child had lived in Michigan before coming to Colorado, but had also been in Wisconsin, New Mexico, and California during his young life, the court ultimately determined that Colorado was the child's home state pursuant to the Uniform Child-custody Jurisdiction and Enforcement Act (UCCJEA).

¶ 4     At the adjudicatory trial, mother testified that the child was born in New Mexico but that she and the child had visited Arizona, lived in Michigan and Wisconsin, and then visited Kansas before coming to Colorado. The juvenile court adjudicated the child dependent and neglected.

¶ 5     Mother appealed the judgment. A division of this court determined that the child had no home state based on the evidence in the record and remanded the matter for the juvenile court to determine whether Colorado had jurisdiction under any of the other paths established by section 14-13-201(1), C.R.S. 2024. The division specifically directed the juvenile court "to conduct a full analysis under Colorado's UCCJEA, section 14-13-201." *See People in Interest of J-T.M.*, (Colo. App. No. 22CA2242, Sept. 7, 2023) (not published pursuant to C.A.R. 35(e)).

¶ 6     The juvenile court held a hearing on remand, at which mother presented additional evidence. The court then found that the child had no home state and that no state had significant connections to the child and mother. Based on those findings, the court concluded that it need not consult with any other state to decide whether there

was a more appropriate forum. Therefore, it found that Colorado had jurisdiction as a last resort and reinstated the adjudication.

¶ 7 Mother appeals arguing that the juvenile court erred because New Mexico is the child's home state and that even if it was not, the court did not have last-resort jurisdiction. We are not persuaded.

## II. Applicable Law and Standard of Review

¶ 8 We review the juvenile court's determination of jurisdiction de novo but review the factual findings underlying that determination for clear error. *See People in Interest of S.A.G.*, 2021 CO 38, ¶ 21. A court's factual findings are clearly erroneous when they have no record support. *Cronk v. Bowers*, 2023 COA 68M, ¶ 12.

¶ 9 To avoid jurisdictional competition over child custody matters, "the UCCJEA sets out a detailed and comprehensive framework that a court must use to determine whether it may exercise jurisdiction in a child custody matter, or whether it may (or, in some cases, must) defer to a court of another state." *People in Interest of C.L.T.*, 2017 COA 119, ¶ 16.

¶ 10 "The primary aim of the UCCJEA is to prevent competing and conflicting custody orders by courts in different jurisdictions" and to "avoid jurisdictional competition over child-custody matters in an

increasingly mobile society." *In re M.M.V.*, 2020 COA 94, ¶ 17. "To effectuate this purpose, [the UCCJEA] establishes a comprehensive framework that a Colorado court must follow to determine whether it may exercise jurisdiction in a child-custody matter or whether it must defer to a court of another state." *Id.*

¶ 11   Under the UCCJEA, a Colorado court may exercise its power to enter a child custody determination only if it has (1) temporary emergency jurisdiction or (2) non-emergency jurisdiction. *S.A.G.*, ¶¶ 25-26. A Colorado court determines whether it has non-emergency jurisdiction by one of the four paths established by section 14-13-201(1). These are (1) home-state jurisdiction; (2) significant-connection jurisdiction; (3) more-appropriate-forum jurisdiction; and (4) last-resort jurisdiction. § 14-13-201(1)(a)-(d); *S.A.G.*, ¶ 26.

¶ 12   A state has home-state jurisdiction only if it "is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within one hundred eighty-two days before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state." § 14-13-201(1)(a).

¶ 13    "Home state" is defined as the state in which

> a child [has] lived with a parent or a person acting as a parent for at least one hundred eighty-two consecutive days immediately before the commencement of a child-custody proceeding. . . . A period of temporary absence of any of the mentioned persons is part of the period.

§ 14-13-102(7)(a).

¶ 14    The UCCJEA prioritizes home-state jurisdiction. In other words, it is only when a child has no home state or the child's home state has declined jurisdiction that a court looks to the three other paths. *In re Parental Responsibilities Concerning B.C.B.*, 2015 COA 42, ¶ 11.

### III. Home State Jurisdiction

¶ 15    On appeal, mother again asserts that New Mexico is the child's home state. She argues that on remand she provided additional evidence that the child resided in New Mexico with her from his birth in April 2019 until May of 2021. She asserts that her absence from New Mexico after May 2021 was a "period of temporary absence" that should be "part of" the one hundred and eighty-two days needed for New Mexico to be the child's home state.

5

¶ 16    At the remand hearing, mother attempted to show that the child lived with her in New Mexico from August 18, 2021 through February 16, 2022, the one hundred and eighty-two consecutive days prior to the filing of the petition in this case. Mother testified that she and the child lived in New Mexico after his birth in April 2019 until May 2021. According to her, they then lived in Wisconsin and Michigan from May of 2021 to July of 2021 and then returned to New Mexico. Mother testified that in January 2022 she travelled to California, then went back to New Mexico to "check on her lease" before traveling to Kansas, Missouri, and, finally, Colorado. At some point, mother also spent time in Arizona. As the juvenile court found, this recitation differed from her testimony at the adjudicatory trial.

¶ 17    Mother urges us to apply the reasoning in *Brandt v. Brandt*, 2012 CO 3, to the additional evidence and conclude that New Mexico is the child's home state. We acknowledge that the remand order specifically directed the juvenile court to conduct a full analysis and did not prevent the juvenile court from considering additional evidence. However, we do not agree with mother's argument.

¶ 18    To begin, in *Brandt,* a child custody order from Maryland existed and the Colorado court was tasked with determining if Maryland had lost exclusive continuing jurisdiction because the parties were no longer present in that state.  *Id.* at ¶ 16.  Here, no previous child custody order from any state exists.

¶ 19    Nonetheless, mother asserts that under the "totality of the circumstances" test set forth in *Brandt,* her absence from New Mexico was temporary and accordingly, New Mexico is the child's home state.  To get there, mother cites to her own testimony that she intended to return to New Mexico after visiting colleges in Kansas, Missouri, and Colorado; that she had a lease in Albuquerque at the time the Department removed the child; that she was registered to vote; and that she had a New Mexico driver's license.

¶ 20    But the juvenile court did not find mother's testimony credible.  It expressed its concerns with the inconsistencies in mother's testimony and found that mother and child lived or visited in various states.  The juvenile court also found that the evidence presented at the remand hearing "still supports the fact that there is no home state for the minor child at the time this case was filed"

and that "it was not [mother's] intent to return [to New Mexico] . . . ."

¶ 21    The record supports the court's findings. Mother's testimony about where she traveled and how long she stayed in various locations during the time immediately prior to the filing of a petition, was inconsistent and contradictory. Additionally, Mother's actions after the Department placed the child in foster care do not confirm an intent to return to New Mexico. Specifically, mother did not return to New Mexico as she testified was her intent. Rather, she moved to Missouri and continued to live there during the pendency of the case. Moreover, she testified that (1) she did "not trust the state of New Mexico" or her family that lived there; (2) her family had "threatened to have [the child] kidnapped, or taken by government entities, and have him placed in [their] care;" and (3) her grandparents had made a "false report" after the child was born resulting in involvement with a New Mexico department of human services.

¶ 22    Therefore, the evidence supports the juvenile court's finding that mother did not live in New Mexico for at least one hundred eighty-two consecutive days immediately before the Department

8

filed the petition in dependency and neglect and its finding that mother's absence from New Mexico during that time was not a period of temporary absence that should be included in the one hundred eighty-two consecutive days. Accordingly, the child had no home state for purposes of the UCCJEA.

## IV.    Last-Resort Jurisdiction

¶ 23    Mother also argues that the juvenile court erred when it found that Colorado could exercise last-resort jurisdiction because it failed to confer with any other state that may have exercised jurisdiction over the child. Mother asserts that the court's finding that it did not "need to consult with any other state . . . because no other state had significant connection jurisdiction" was incomplete because it also needed to "find[] that no other state ha[d] jurisdiction." We disagree.

¶ 24    Mother's argument is that the juvenile court was required to confer with New Mexico or possibly Missouri before it took last-resort jurisdiction. But conferral to determine whether Colorado is a more appropriate forum is only required if (1) the child has a home state other than Colorado; or (2) "the child and at

9

least one parent . . . have a significant connection" with a state "other than mere physical presence." § 14-13-201(b), (c).

¶ 25    We have already determined that the child has no home state. And mother does not dispute the juvenile court's finding that no state had significant connections. Rather, she argues that the court must also find that no other state had jurisdiction. She cites to *S.A.G.* for support.

¶ 26    Mother's reliance on *S.A.G.* is misplaced. In that case, our Supreme Court remanded a matter to the juvenile court to determine whether Arkansas was a child's home state. *Id.* at ¶ 45. The Supreme Court provided guidance to the juvenile court about how to determine jurisdiction if Arkansas was not the home state, advising it to consider whether the child and parents had a "significant connection" with Colorado or another state and, if not, explaining that Colorado could take jurisdiction as a last resort. *Id.* at ¶ 48.

¶ 27    The *S.A.G.* court then said "[a]ny other path to non-emergency jurisdiction will require the juvenile court to contact an Arkansas court and ask it to 'decline[] to exercise jurisdiction.'" *Id.* at ¶ 48 (quoting § 14-13-201(1)(b)-(c)). Mother cites to this sentence to

argue that the Colorado court had to consult with New Mexico, Missouri, and possibly all other states she lived in or visited. But her analysis ignores the *S.A.G.* court's statement: "That is to say, if the juvenile court finds that Arkansas has home-state jurisdiction, then last-resort jurisdiction becomes impossible and both significant-connection and more-appropriate forum jurisdiction would require an Arkansas court to decline jurisdiction." *Id.*

¶ 28　Thus, when read in its entirety, *S.A.G.* requires a juvenile court to consult with another state when that state has home-state jurisdiction and the Colorado court has significant connections so that it can determine the more appropriate forum. *Id.* But here, the child has no home state and the court found that he and mother also had no significant connections to any state. Accordingly, the court appropriately determined that Colorado had last-resort jurisdiction pursuant to section 14-13-201(1)(d).

## V.　Disposition

¶ 29　We affirm the judgment.

CHIEF JUDGE ROMÁN and JUDGE RICHMAN concur.